ROGERS, Justice.
 

 By bill of information filed on December 30, 1941, Mitchell Laborde and a juvenile were charged jointly-with committing a criminal offense. The information against the juvenile was nolle prosequied, and he was held for the Juvenile Court. On January 16, 1942, acting on the motion of his attorney, the trial judge appointed a Lunacy Commission to examine and report on the mental condition of Laborde. The
 
 *294
 
 Commission, composed of Dr. C. Grenes Cole, Coroner of the Parish of Orleans, and Dr. George F. Roeling, an expert in mental diseases, filed its report on March 19, 1942, and on March 23, 1942, the judge held a hearing to determine the mental condition of Laborde. At the conclusion of the hearing, at which the members of the Lunacy-Commission testified, the judge ordered the findings of the Commission filed and adjudged Laborde to be insane and dangerous to the community, and that he be confined to the East 'Louisiana State Hospital at Jackson, Louisiana.
 

 On April 13, 1943, the judge, on motion of his attorney, ordered Laborde transferred from the Hospital to the parish prison in the City of New Orleans for final disposition of his case. The trial judge appointed a second Lunacy Commission, composed of Dr. Cole and Dr. Joseph A. O’Hara, an expert in mental diseases, to inquire into Laborde’s present mental condition. The members of the Lunacy Commission reported to the judge that they found Laborde to be presently insane and recommended that he be returned to the hospital at Jackson, Louisiana. At the conclusion of a sanity hearing held on June 14, 1943, the judge ordered Laborde recommitted to the hospital subject to the further orders of the court. .
 

 On December 13, 1945, on' motion of his present attorney, the judge ordered Laborde transferred from the hospital at Jackson to the parish prison in New Orleans for a third sanity hearing. When Laborde was returned to the parish prison the judge requested Dr. Cole, the Corone'r- of the Parish and a member ‘of the previous Lunacy Commissions, to re-examine Laborde as to his present mental condition. On January 11, 1946, the judge conducted a sanity hearing, and after hearing the testimony of Dr. Glenn J. Smith, Superintendent of the East Louisiana State Hospital; Dr. C. P. May, an expert in mental diseases who had been requested by relatives of Laborde to examine him; Laborde himself; a brother of Laborde, and Dr. Cole, the judge ruled that Laborde was still insane and dangerous to the community and ordered him recommitted to the East Louisiana State Hospital at Jackson, Louisiana. Laborde, through his attorney, has appealed from the ruling.
 

 Article
 
 267
 
 of the Code of Criminal Procedure, as amended by Act No. 136 of 1932, as amended and reenacted by Act No. 261 of 1944, is the law under which the sanity or insanity of a person accused of a criminal offense is determined.
 

 The pertinent part of the Code article as amended by the Act of 1944, reads as follows: “If before or during the trial the court has reasonable grounds to believe that the defendant, against whom an indictment has been found or information filed, is insane, or mentally defective, to the extent that he or she is unable to understand the proceedings against him or her or to assist in his or her defense, the'court shall im
 
 *296
 
 mediately fix a time for a hearing to determine the defendant’s mental condition. * * *
 

 ifIf the court, after the hearing, decides that the defendant is able to understand the proceedings and to assist in his or her defense, it shall proceed with the trial. If, however, it decides that the defendant through insanity or mental deficiency is not able to understand the proceedings or to assist in his or her defense, it shall take proper steps to have the defendant committed to the proper institution. If thereafter the proper officer of such institution is of the opinion that the defendant is able to understand the proceedings and assist in his or her defense, he shall x'eport this fact to the court which conducted the hearing. If the officer so reports, the court shall fix a time for a hearing to determine whether the defendant is able to uxiderstand the proceedings and to assist ixi his or her defense. This hearing shall be conducted in all respects like the original hearing to dclex-mine defendant’s mental condition. If after the hearing the court decides that the defendant is able to understand the proceedings against him or her and to assist in his or her defense, it shall proceed with the trial. If, however, the court decides that the defendant is still not able to understaxid the proceedings against him or her or to assist in his or her defense, it shall recommit him or her to the proper institution.”
 

 It is not disputed that the sanity hearing was conducted in accordance with the provisions of Act No. 261 of 1944. During the hearing two bills of exception were reserved on behalf of Laborde. When Dr. Cole was called as a witness by the State, counsel for Laborde objected to the introduction of any testimony by the State on the ground that Act No. 261 of 1944 contemplated that the physician in charge of the hospital was the only person authorized to make recommendations to the court and that the court was bound to follow the recommendations. The judge overruled the objection and counsel for Laborde reserved a bill of exception ¡to the ruling. There is no merit in the bill.
 

 Act No. 261 of 1944 expressly provides for a hearing on the issue of present insanity, which may be determined by the judge alone without the intervention of a jury. If it were the mandatory duty of the judge to follow the recommendation of the physician in charge of the hospital that a person committed to the, institution for present insanity should be released because he had recovered his sanity, a hearing on the question would be wholly unnecessary. Under the provisions of Act No. 261 of 1944, if the judge has reasonable grounds to believe that the defendant in a criminal prosecution is insane or mentally defective to the extent that he is unable to understaxrd the proceedings against him or to assist in his defense, the court is required to fix a time for a hearing to determine the defendant’s present mental condition. If, after the hearing, the judge decides the de
 
 *298
 
 fendant is presently sane, he shall proceed ■with the trial. If, however, he decides that the defendant is presently insane, he is required to take the necessary steps to have the defendant committed to the proper institution. If thereafter the proper officer of the institution is of the opinion that the defendant is presently sane, he shall report the fact to the court which conducted the original hearing and the court is required to fix a time for another hearing to determine whether the defendant is able to understand the proceedings and to assist in his defense. This hearing must be conducted in all respects like the original hearing which was had to determine defendant’s mental condition.
 

 In the present case it was incumbent upon the judge to determine whether Laborde had recovered his mental faculties as suggested in the letter of Dr. Smith, the Superintendent of the hospital, or whether he had mot recovered his mental faculties and it would be dangerous to the community to permit defendant to be released. In order that he might be in a position to properly determine the question it was necessary for the judge to hear the testimony of all the witnesses produced by the State, as well as by Laborde. He did so and then ruled against Laborde holding that he was still insane and that his release at this time would be dangerous and a menace to the •community. In accordance with his ruling, the judge ordered Laborde recommitted to the East Louisiana Hospital for the insane at Jackson. Laborde’s second bill of exception is based on the ruling and his objection thereto.
 

 At the request of the present attorney for Laborde, Dr. Glenn J. Smith, the Superintendent of the East Louisiana State Hospital for the insane, in a letter addressed to the trial judge dated September IS, 1944, stated that: “We wish to advise you that this patient has shown a great deal of improvement since his admission here and at the present time has adjusted well to the routine of the hospital and has been a very good and cooperative patient. We feel that at the present time he has returned to his normal condition and is without psychosis and also that he can distinguish between right and wrong and can assist in the defense of his case.” Notwithstanding the statements contained in his letter, Dr. Smith testified at the sanity hearing on January 11, 1946, in the Criminal District Court for the Parish of Orleans, that during the four years Laborde was confined in-the hospital he saw him only six or eight times, but that he had received reports concerning his condition from other physicians. He testified that patients of Laborde’s type are amenable to discipline; that while inmates of an institution they become perfectly docile, and hence those in charge of the hospital are not in a position to know how long to keep them there until they are given a trial in court. It was for that reason he had recommended the procedure to determine whether they should
 
 *300
 
 continue to hold Laborde in the hospital or release him therefrom. He further testified that about seventy-five per cent of mentally defective persons of the Laborde type were returned to the hospital after they had been released. When asked the direct question whether he thought if Laborde were released from the hospital he would return to his former way of living and engage in crime, he stated he would say that he had a seventy-five per cent chance of returning to the hospital and a twenty-five per cent chance of not returning; that he did not know whether Laborde, if released from the hospital, would be a menace to society or dangerous to the community, but that his chance of being so was about seventy-five per cent. 1
 

 Dr. C. P. May, who stated that he was requested by the family of Laborde to examine him, testified that he visited Laborde at the hospital on June 10, 1945, and again on January 9, 1946, at the parish prison in New Orleans, two days before the hearing. Dr. May agreed with the statement of Dr. Smith that about seventy-five per cent of the patients discharged from the hospital are returned. He further stated that when on their own such patients lack control and that they are much better under discipline. He further stated that it was purely speculative whether Laborde, if released from the hospital, would get along well or not, but that he did not think he was insane. He admitted, however, that Laborde’s condition changed between June 10, 1945, when he saw him in the hospital and January 9, 1946, when he saw him in the parish prison, and that his condition was not as good when he saw him in the parish prison as it was when he saw him in the hospital.
 

 Laborde himself testified that, if released, he would try to get a job and support his mother and keep away from bad company. His brother, Gilbert Laborde, testified that he was twenty-three years of age and that if his brother were released from the hospital, he would exercise supervision over him.
 

 Dr. Cole, the Coroner of the Parish of Orleans who served on the two previous Lunacy Commissions and who was appointed by the judge to examine defendant when he was recommitted to the parish prison for the third sanity hearing, testified positively that Laborde is presently insane and that he had found no change in his condition. He stated it was his opinion that if Laborde were released at this time, he would be a menace to the community and that, as an expert on mental diseases, he would not recommend his release from the institution.
 

 The purpose of the statute, providing for a hearing to determine whether the mental condition of an accused, whose plea of present insanity has been sustained, has been restored to the extent that he can understand criminal proceedings pending against him and assist in his defense, is to prevent the trial of an insane person and, at the same time, to protect the public against his' unlawful acts. State v. Sample, 203 La. 841, 14 So.2d 678.
 

 
 *302
 
 From the record before us it appears that a full hearing was had on the issue of whether Laborde, whose plea of present -insanity had been sustained, had '.been restored sufficiently to permit his release from the hospital. After hearing the •witnesses, including Laborde himself who, in court and as a witness, was under his personal observation, the trial judge xeached the conclusion that Laborde was .still insane and that his release would be •dangerous and a menace to the community. •Our examination of the record has disclosed nothing to cause us to take issue with .the conclusion reached by the trial judge.
 

 For the reasons assigned, the judgment .appealed from is affirmed.