66 So.2d 796

**STATE v. SWAILS.**

Nos. 41261, 41262.

July 3, 1953.

Wellborn Jack, John E. Lawhon, James T. Jeter and Jack C. Wimbish, Shreveport, for defendant-appellant.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., and Edwin L. Blewer, Dist. Atty., Shreveport, for appellee.

McCALEB, Justice.

Appellant, Roy C. Swails, was indicted on February 4, 1952, for the murder of Arlene Johnson Brown and the attempted murder of her husband, Charles W. Brown, at Shreveport. On March 18, 1952, he pleaded present insanity and insanity at the time of the commission of the crimes in each case and the court appointed a lunacy commission composed of Dr. Willis P. Butler, Caddo Parish Coroner, and Dr. Douglas L. Kerlin, a psychiatrist, to examine him. On April 24, 1952, these physicians reported that appellant was presently insane and further that he was not of sound mind at the time of the commission of the crimes. Following a hearing, the trial court, on April 25, 1952, declared appellant presently insane and he was committed to the East Louisiana State Hospital at Jackson.

On October 25, 1952, the Superintendent of the East Louisiana State Hospital, Dr. E. M. Robards, informed the judge that appellant's condition had improved to such an extent that he was able to understand the proceedings and assist in his defense and that, consequently, he should be returned to court for final disposal of the charges against him. Attached to the communication was a copy of the report of the staff of the hospital.[1]

1. The hospital's diagnosis is that appellant was suffering from chronic brain syndrome associated with cerebral arteriosclerosis with psychotic episodes now in remission. A long history of excessive use of alcohol is believed to have been the precipitating factor in bringing on the acute psychotic break in the already basic condition of cerebral arteriosclerosis.

The hospital report of October 23, 1952 stated that the patient is in good contact with reality, and memory for

Upon the failure of the court to take any action in the premises, appellant's counsel filed a petition in each case requesting that he be brought from the asylum to the court for a new hearing on his present mental condition. When the petition was denied by the trial court, counsel applied to this court for relief and, on their application for remedial writs, we instructed the judge to grant a hearing.

In conformity with our ruling, the judge, on December 5, 1952, appointed the same lunacy commission, composed of Doctors Butler and Kerlin, to re-examine appellant. Following the completion of their examination, the physicians filed their report and, on January 9, 1953, a hearing was had to determine appellant's present mental condition. After hearing the evidence, the judge wrote an opinion in which he accepted the views voiced by Doctors Butler and Kerlin in their report and testimony, viz.—that appellant is able to understand the proceedings against him and to assist in his defense although he is afflicted with a brain syndrome (cerebral arteriosclerosis) which is presently in a state of remission, meaning "a diminution or abatement of the symptoms of his disease * * *". Nevertheless, the judge ruled that, in view of the further medical opinion that appellant, if released from the hospital, would very likely relapse into his prior unsound mental state and would become a menace to society and dangerous to the community, the case was on a parity with that of State v. Laborde, 210 La. 291, 26 So.2d 749, wherein this court stated that a person accused of crime, and committed to a mental institution on his plea of present insanity, should be recommitted if it appears, at a subsequent hearing, that his release would be dangerous to the community. Conformably, it was ordered that appellant be returned to the mental hospital. He has appealed from the adverse decision.

The statutory law governing the subject of present insanity of a person charged with crime is LSA–R.S. 15:267, the pertinent part of which declares:

> "If before or during the trial the court has reasonable ground to believe that the defendant against whom an indictment has been found * * * *is insane or mentally defective to the extent that the defendant is unable to understand the proceedings against him or to assist in his defense,* the court shall immediately fix a time for a hearing to determine the defendant's mental condition. * * *
>
> "If the court, after the hearing, decides *that the defendant is able to understand the proceedings and to assist*

recent and past events is intact except for a portion of time prior to, during and after the alleged crime. The hospital staff concluded that the patient is able to understand the nature of the charges against him and could assist counsel in his defense and, therefore, should be returned to court for final disposition.

*in his defense,* it shall proceed with the trial. If, however, it decides that the defendant, through insanity or mental deficiency *is not able to understand the proceedings or to assist in his defense,* it shall take proper steps to have the defendant committed to the proper institution. If thereafter the proper officer of such institution is of the opinion *that the defendant is able to understand the proceedings and assist in his defense* the officer shall report the fact to the court which conducted the hearing. If the officer so reports, the court shall fix a time for a hearing *to determine whether the defendant is able to understand the proceedings and to assist in his defense.* This hearing shall be conducted in all respects like the original hearing to determine the defendant's mental condition. If after the hearing the court *decides that the defendant is able to understand the proceedings against him and to assist in his defense* it shall proceed with the trial. If, however, the court *decides that the defendant is still not able to understand the proceedings against him or to assist in his defense,* it shall recommit him to the proper institution". (Emphasis ours.)

It will be seen from the foregoing that the criterion provided by the statute for determining the question of present insanity of one charged with crime is whether the mental defect or the insanity is so pronounced that he is unable to understand the proceedings against him and to assist in his defense. The test thus prescribed is actually nothing more than a statutory recognition of the rule at common law which was followed by the jurisprudence of this court prior to the adoption in 1928 of a Code of Criminal Procedure.[2] State v. Burnham, 162 La. 737, 111 So. 79.

In State v. Genna, 163 La. 701, 112 So. 655, the court, in discussing the question of present insanity, cited with approval the rule laid down in Wharton & Stillé, Medical Jurisprudence, Vol. 1, p. 210, Sec. 206 (5th Ed. 1905), as follows:

"The test of present insanity which will prevent a trial in a criminal action is whether the person is mentally competent to make a rational defense. And the question is whether the accused was sane enough to present to counsel the facts which ought to be stated and presented to the jury upon his trial. The knowledge of right and wrong as a test of insanity does not apply to a collateral proceeding to ascertain the mental capacity of the person about to be put on trial for a criminal act. A person arraigned for crime, however, who is capable of un-

2. LSA–R.S. 15:267 was originally Article 267 of the Code of Criminal Procedure, Act No. 2 of 1928, as amended by Acts No. 136 of 1932 and No. 261 of 1944.

derstanding the nature and object of the proceeding against him, and who comprehends his own condition in reference to it, and can conduct his defense in a rational manner, is to be deemed sane for the purpose of being tried, although on some other subjects his mind may be unsound. * *"

The same precept is stated in 44 C.J.S., Verbo, Insane Persons, § 127, p. 284, thus:

> "The test of insanity of an accused precluding his being put on trial for a criminal offense is usually stated to be his capacity to understand the nature and object of the proceedings against him and to conduct his defense in a rational manner; and, if he passes this test, he may be tried, although on some other subjects his mind may be deranged or unsound."

See also United States v. Chisolm, C.C., 149 F. 284; Carter v. State 198 Miss. 523, 21 So.2d 404 and Annotation in 3 A.L.R. 94 and cases there cited.

In the case at bar, the medical evidence shows that appellant is suffering with cerebral arteriosclerosis, either resulting from or intimately associated with the imbibing of large quantities of alcohol (1 quart of whiskey a day) over a long period of time. However, as a consequence of the regulated life with enforced abstinence from drink, during his confinement to the hospital, appellant has regained, temporarily at least, his mental faculties and, according to all the doctors, "recognizes and distinguishes right from wrong, and realizes the probable consequences of his acts" and further understands the charges against him and indicates that he can assist in his defense.

This is all that LSA-R.S. 15:267 requires as a predicate for appellant's trial. The apprehension and even the predictions of some of the physicians that appellant may be a menace to society, if he is ever released, affords no basis whatever for holding him presently insane, within the meaning of the law, or for recommitting him to an institution. And to deny him a trial for such a speculative reason would, we think, infringe upon his fundamental right of due process of law and to be accorded a speedy public trial vouch-safed by Sections 2 and 9 of Article 1 of our Constitution and the Fourteenth Amendment to the Constitution of the United States.

The trial judge felt that his freedom of decision was circumscribed by the ruling of this court in State v. Laborde, supra. It must be acknowledged that there are expressions in that case supporting the view that, if, on a hearing of present insanity, it is found that the accused is in such a state of mind that he would become dangerous and a menace to the community were he released from custody, he should be recommitted. Those observations evidently were prompted by the dictim contained in the decision of State v. Sample, 203 La. 841, 14 So.2d 678, 680, declaring that the obvious

purpose of the statute, LSA–R.S. 15:267, "is to prevent the trial and punishment of an insane or demented person and at the same time protect the public against his unlawful acts or acts of violence".

■ These statements in the Sample and Laborde cases are erroneous. The statute is founded on the cardinal and humane concept that no person shall be tried for the commission of a crime when he is mentally incapable of understanding the proceeding against him and of making an intelligent defense. Protection of the public from possible harm from the accused is not envisioned by the law. This has been but recently recognized by this court in State v. Estes, 212 La. 694, 33 So.2d 199, where the lunacy commission had reported that the accused was presently sane but that he was subject to future attacks of mental aberration. The trial judge, acting on the Commission's report, deferred the trial and committed the accused to a mental hospital. In reversing this ruling on remedial writs, we held that the only issue for decision was whether the accused was able to understand the proceedings and to assist in his defense and the fact that he might become mentally incompetent at some future date afforded no ground for his commitment.

The facts in this and the Estes case are so closely akin that the cases are practically indistinguishable. Here, appellant has, in the past, suffered from a mental ailment which now has abated and is in remission, whereas, there, the accused had suffered from a severe form of war neurosis and was "subject to future attacks of mental aberration". Obviously, the result in this case is controlled by the Estes case for here, as there, appellant is able to understand the proceedings and assist in his defense.

Counsel for the State seemingly recognize that the dictim of State v. Laborde cannot be upheld for their principal contention on this appeal is that the trial judge erred in concluding that appellant was able to assist in his defense, in view of the report of the lunacy commission in which it is stated that "Mr. Swails claims that at present he recalls practically nothing for a period extending for a year or more before the time of the commission of the alleged crime until after he had been committed to the hospital for about two months, and that all that he knows about any such crime is what his wife has told him and what he later read in the papers, and with this statement we agree". It is argued by the district attorney that it is not enough that appellant is able to confer with his counsel intelligently; that, in order to be able to assist them in his defense, he must have such possession and control of his mental powers, including the faculty of memory, as will enable him to testify and inform his counsel of material facts bearing upon the criminal acts charged against him, which he cannot do in this case as he remembers nothing.

■ This contention would be very forceful and persuasive were this a prose-

cution in which the accused was pleading not guilty for, in such case, his inability to inform his counsel of any of the facts regarding his own movements in relation to the charges against him would materially affect him in his defense. But, here, appellant is pleading insanity at the time of the commission of the crimes—a special defense under our law. LSA–R.S. 14:14 and 15:261. His alleged amnesia as to the events occurring at, before and after the crimes were committed is not a factor which hampers his defense. On the contrary, the very fact that appellant does not remember anything concerning his alleged criminal acts may be of material aid to his counsel in their presentation of a case of insanity and his testimony, if he sees fit to take the stand, may have considerable weight with the jury.

The judgment appealed from is reversed and the case is remanded to the trial court for further proceedings in accordance with law and consistent with the views herein expressed.

FOURNET, C. J., absent.