291 So.2d 390 (1974)
STATE of Louisiana
v.
Dewitt GRAY.
No. 54013.
Supreme Court of Louisiana.
February 18, 1974.
*391 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Anthony J. Graphia, Asst. Dist. Atty., for plaintiff-appellee.
James A. McGraw, Marion Weimer, Baton Rouge, for defendant-appellant.
SUMMERS, Justice.
Appellant, Dewitt Gray, was indicted by the grand jury of East Baton Rouge Parish and charged with the murder of his wife Rose Ella Gray. La.R.S. 14:30. He was tried by a jury, found guilty without capital punishment and sentenced to be committed to the Louisiana Department of Corrections and confined for the remainder of his natural life. La.R.S. 15:824. Two bills of exceptions were reserved during the course of these proceedings and are urged on this appeal.

Bill No. 1
At the arraignment appellant entered a plea of not guilty and not guilty by reason of insanity. La.R.S. 14:14. Thereafter application was made for a hearing to determine appellant's present sanity, it being alleged that he was insane or mentally defective to the extent that he was unable to understand the proceedings against him or to assist in his defense. The hearing was granted and two disinterested physicians and qualified experts in mental diseases were appointed to examine into the present mental condition of appellant as of the date of the commission of the crime. Pursuant to the appointment, Dr. Hypolite T. Landry, Jr., reported: "After extensive questioning and a mental examination, I feel that he (appellant) is able to understand the charges against him and he is able to assist his counsel in his defense." He did indicate, however, that appellant, because of head injuries incurred in 1955, should be given an extensive neurological workup to determine if a cause existed for his claimed amnesia at the time the offense was committed.
Doctor Frank G. Rieger reported he examined appellant on November 16, 1972 and "find he is rational, well oriented and fully understands the charges against him. He is capable of assisting his attorney in his defense."
After examining appellant, Doctor F. A. Silva reported on November 29, 1972: "Patient's recent memory is excellent and his remote memory is adequate except for the amnesia concerning the actual death of his wife . . . he is more than able to understand the charges against him and assist in his own defense. Concerning the period of amnesia, that he claims, I didn't find in my examination any fact that would explain this . . .."
On June 22, 1972 Doctor Curtis A. Steele reported his evaluation to be "that he (appellant) is able to understand the proceedings against him, and to assist in his defense." He was of the opinion that at the time of the commission of the offense appellant was suffering from "a condition known as Hysterical Neurosis, Dissociative Type."
At the hearing to determine the present sanity of appellant Dr. Steele testified that he found no evidence from his interview with appellant of organic impairment of the brain that would account for the inability to remember, or to account for the amnesia. He did feel, however, that appellant's condition could have supported the amnesia claimed at the time of the commission of the offense. The claim was that for one hour commencing immediately prior to the killing and ending shortly thereafter, appellant could not remember what transpired. This condition, he said, would not necessarily mean that the person with amnesia could not distinguish right *392 from wrong. Psychiatrists, he said, did not really know the answer to this question. He reaffirmed his report by testifying that there was no reason why appellant could not fully appreciate the nature of the charges against him and assist in his defense.
When the hearing was completed, the trial judge ruled "that the defendant is presently sane and capable of understanding the charges against him and assisting in his defense." This bill was reserved to the ruling.
As we understand defense counsel's argument on this bill, the fact that doctors found appellant to be presently sane is not determinative of his ability to assist in his defense when he had amnesia at the time of the commission of the offense and cannot remember what transpired.
Article 641 of the Code of Criminal Procedure is pertinent to this issue. It provides that "mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense."
In State v. Swails, 223 La. 751, 66 So.2d 796 (1953) this Court addressed itself to an identical defense, saying:
"This contention would be very forceful and persuasive were this a prosecution in which the accused was pleading not guilty for, in such case, his inability to inform his counsel of any of the facts regarding his own movements in relation to the charges against him would materially affect him in his defense. But, here, appellant is pleading insanity at the time of the commission of the crimesa special defense under our law. LSA-R. S. 14:14 and 15:261. His alleged amnesia as to the events occurring at, before and after the crimes were committed is not a factor which hampers his defense. On the contrary, the very fact that appellant does not remember anything concerning his alleged criminal acts may be of material aid to his counsel in their presentation of a case of insanity and his testimony, if he does see fit to take the stand, may have considerable weight with the jury."
The authority of the Swails Case is controlling here, and we find this bill to be without merit. A past condition of mental derangement does not constitute a bar to an accused presently standing trial for the crime charged. And the evidence preponderates that he was presently sane and capable of assisting in his defense. The test of Article 641 has been met.

Bill No. 2
Defense counsel argues in support of this bill that the trial judge erred in overruling a motion to quash based upon the ground that:
"Female citizens were systematically, and invidiously, discriminatory, excluded from the Grand Jury list, venire, and empaneled Grand Jury which returned a true bill against him; and, accordingly, the indictment against him is invalid for the reason that it was returned by a Grand Jury empaneled from a venire made up contrary to the requirement of the equal protection clause and the due process clause of the Fourteenth Amendment of the Constitution of the United States."
The issue presented has been squarely answered adversely to this contention by this Court on numerous occasions. The Constitution and the Code of Criminal Procedure do not permit the selection of women for jury service unless they have previously filed with the clerk of court a written declaration of their desire to be subject to service. La.Const. art. VII, 41; La.Code Crim.Proc. art. 402. See State v. Jack, 285 So.2d 204 (La.1973); *393 State v. Baker and Dorsey, 288 So.2d 52, decided October 29, 1973.
This bill has no merit.
For the reasons assigned, the conviction and sentence are affirmed.
BARHAM, J., concurs in decree. Exclusion of females from jury service is unconstitutional.
DIXON, J., concurs.