297 So.2d 190 (1974)
STATE of Louisiana
v.
Earl P. MEDLOCK, Sr., et al.
No. 54370.
Supreme Court of Louisiana.
June 10, 1974.
*192 Murphy W. Bell, Director, Vincent Wilkins, Jr., Trial Atty., Baton Rouge, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Richard E. Chaffin, Asst. Dist. Atty., for plaintiff-appellee.
BARHAM, Justice.
The defendants were charged by bill of information with possession of LSD with intent to distribute, tried before a jury, and convicted of the crime charged. Defendant, Earl P. Medlock, Sr., was sentenced to twenty years' imprisonment, Earl P. Medlock, Jr., to ten years' imprisonment, and Dorothy L. Medlock to four years' imprisonment, all at hard labor. Michael H. Medlock was sentenced to five years' imprisonment at hard labor but the sentence was suspended and defendant was placed on supervised probation for five years. Upon this appeal, defendants rely on ten bills of exceptions for a reversal of their convictions and sentences.[1]
The LSD which defendants were charged with possessing was found in their home moments after the package containing it was delivered via parcel post. An East Baton Rouge Sheriff's Department undercover agent had learned from one of the defendants that the LSD package was expected. Postal authorities were alerted, the package was intercepted, and 27 of the 28 plastic bags of LSD were removed and bags of flour substituted therefor. The delivery was made while the house was under surveillance and, minutes later, officers armed with a search warrant entered the residence and found the LSD.
BILLS OF EXCEPTIONS NOS. 1 AND 3
Bill of Exceptions No. 1 was reserved when the trial court overruled defendants' objection to the prosecution's opening statements concerning proof of other offenses. Bill of Exceptions No. 3 was reserved during trial, when the trial court overruled defendants' objections to evidence of other offenses elicited by the State from its witness, Officer Spillers. The evidence elicited was testimony concerning sales of controlled dangerous substances to Officer Spillers and others. The basis of the defendants' objections is that the State's presentation of evidence of other offenses, offered to prove the essential element of intent to distribute, was a mere subterfuge for showing the bad character of the accused.
The charge against the defendants was possession of LSD with intent to distribute. The State had the affirmative burden of proving guilty knowledge and specific intent beyond a reasonable doubt. R.S. 15:446 provides:
"When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of *193 showing guilty knowledge and intent, but not to prove the offense charged."
(Emphasis here and elsewhere supplied). R.S. 15:445 provides:
"In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction."
In State v. Prieur, 277 So.2d 126 (La.1973), we set forth safeguards with which the State and the trial court must comply when evidence of other offenses is to be presented at trial. The Prieur procedure was scrupulously followed in the case at bar. In addition, in the Prieur decision and in State v. Moore, 278 So.2d 781 (La. 1973), the Court gave substantial attention to the question of balancing probative value against prejudicial effect. The very relevant evidence of the other offenses here was of great probative value in establishing the essential ingredient of the crime intent to distribute.[2]
The State's use of evidence of other offenses in this trial is authorized by R.S. 15:445, R.S. 15:446 and our jurisprudence. These bills of exceptions are without merit.
BILL OF EXCEPTIONS NO. 1-A
Defense counsel reserved this bill when the trial court denied his motion to sever the defendants for trial. The bases for the severance motion (and the enlarged severance motion, filed at the trial court's suggestion and by its leave) were allegations that the defendants' respective defenses were antagonistic and that their right to call witnesses for their defense was foreclosed by the coexistent right of their codefendants not to be forced to take the stand.
Hearing was held on defendants' motion to sever but no facts were presented to the trial court in support of the allegation of antagonistic defenses. Nor did defendants show, in their motion or upon hearing, their willingness to testify on each other's behalf if severance was granted.
Under Code of Criminal Procedure Article 704, the granting of a severance is within the discretion of the trial judge. Ruling on a motion for severance will not be disturbed in the absence of a clear abuse of discretion. State v. Smith, 283 So.2d 470 (La.1973) and cases cited therein. Under our jurisprudence, a mere allegation of antagonistic defenses does not require the granting of a motion for severance. State v. Ross, 263 La. 271, 268 So. 2d 222 (1972); State v. Bonner, 252 La. 200, 210 So.2d 319 (1968). Nor can defendants' bare allegation that a joint trial would deprive them of the right to call the co-defendants as witnesses avail them. We have repeatedly held that such an allegation does not, of itself, warrant severance since the co-defendants can plead the Fifth Amendment privilege against self-incrimination at the separate trials. See State v. Baker, 288 So.2d 52 (La.1973) and cases cited therein.
At the hearing on the motions to sever, defense counsel also contended that trying defendants, Earl Medlock, Jr., Michael H. Medlock, and Dorothy L. Medlock, who had no prior criminal records, with Earl Medlock, Sr., who had a prior criminal record, would prejudice the three defendants without records and therefore *194 warranted a severance. This Court considered and rejected a similar contention in State v. Smith, 283 So.2d 470 (La.1973).
Bill of Exceptions No. 1-A is without merit.
BILL OF EXCEPTIONS NO. 2
This bill was reserved to the trial court's denial of a defense motion for mistrial. During the testimony of Postal Inspector Wilson it appeared that the witness was unable to locate, among the evidence, the particular plastic bag containing LSD which had been marked prior to postal delivery of the package containing the LSD and 27 bags containing the substituted flour. During a recess the District Attorney requested that Officers Watts and Weber, who participated in the substitution, look for the bag containing the LSD among the evidence. The officers found the bag which Postal Inspector Wilson had been unable to locate. During cross-examination of Officer Watts defense counsel elicited information concerning the search and discovery during recess and moved for a mistrial on the basis of this allegedly irregular behavior.
Code of Criminal Procedure Article 775 provides:
"A mistrial may be ordered, and in a jury case the jury dismissed, when:
"(1) The defendant consents thereto;
"(2) The jury is unable to agree upon a verdict;
"(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
"(4) The court finds that the defendant does not have the mental capacity to proceed;
"(5) It is physically impossible to proceed with the trial in conformity with law; or
"(6) False statements of a juror on voir dire prevent a fair trial.
"Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
"A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial."
Defendants contended that the conduct of Officers Watts and Weber violated the court's sequestration order and gave the appearance of tampering with the evidence. The trial court correctly ruled that at the time the officers located the bag containing LSD none of the items brought into the courtroom by the prosecution had been admitted into evidence. These tangible items were still in the State's possession and under its control. Considering Watts' testimony to the effect that neither he nor Weber added anything to the mass of tangible items and that he merely located the marked plastic bag of LSD which was already there, we do not find that the trial court's denial of a mistrial was error.
BILL OF EXCEPTIONS NO. 6
This bill was reserved when the trial court denied defendants' motion for a mistrial, made during the State's closing argument. The mistrial motion was levelled at a remark concerning the State's knowledge that the defendants had sold drugs on occasions other than those proven by evidence of sales to Officer Spillers. The following paragraph taken from the State's argument contains the remark which prompted the mistrial motion:
"I submit, gentlemen, that Earl Medlock, Sr. has been proven guilty beyond the shadow of any doubt. We have proved that Medlock junior sold to Spillers, that it was he who went to California *195 to get the dope, he to whom the dope was addressed, E. P. Medlock, Jr. We have proven that on a couple of occasions, and those aren't the only ones we know about, Spillers certainly is not the only one to whom they sold. He just happens to be the only police officer."

Defense counsel argues that the State's mention of other drug sales by the defendants was improper because no evidence of sales to persons other than Officer Spillers was presented during the course of trial. It is therefore contended that this remark is tantamount to a reference to another crime, as to which evidence is not admissible, and requires the order of a mistrial under C.Cr.P. Art. 770.
An examination of the record reveals that the State did present evidence of a sale or sales to someone other than Officer Spillers. Spillers testified that on an occasion when he contacted Medlock, Sr. about purchasing marijuana, Medlock, Sr. stated that he had no marijuana to sell but that he had 100 capsules of mescaline he would be willing to sell. Spillers testified that Medlock, Sr. further stated that "* * * he and Buddy, that's Earl Medlock, Jr., had [had] two hundred caps of mescaline but they'd already sold one hundred, and so I agreed to purchase the other hundred hits for one hundred dollars, * * *." The defense did not object to Spillers' testimony relating Medlock, Sr.'s admission of another sale or sales. Under' the circumstances, the State's reference in closing argument to other drug sales besides those made to Spillers does not amount to a violation of C.Cr.P. Art. 770. The trial court's denial of the motion for mistrial was not error.
BILL OF EXCEPTIONS NO. 7
Defendants moved for a mistrial when, during a recess on voir dire examination, two of the defendants were handcuffed before they were led from the courtroom, at their request, for personal reasons. This bill of exceptions was reserved when the trial court denied the motion for mistrial.
In brief, it is contended that defendants were not on trial for crimes of violence and that there was no indication that any defendant had violent tendencies. It is further contended that there can be little doubt that the prospective jurors' viewing of these defendants in handcuffs prejudiced the defendants in the minds of the prospective jurors. The State contends in brief that the necessity for removing the defendants from the courtroom in order to allow them to attend to personal needs warranted the handcuffs.
We cannot agree that prejudice to the defendants clearly arose from this incident. Defendants had ample opportunity to gauge the reaction of prospective jurors by inquiring about the effect of the incident during subsequent voir dire examination, but there is no indication in the record that such inquiry was undertaken. In State v. Tennant, 262 La. 941, 265 So.2d 230 (1972), we stated, with regard to a claim of prejudice arising out of similar circumstances,
"* * * And if the record does not show the occurrence was prejudicial, the motion for a mistrial will be denied. Gregory v. United States, 365 F.2d 203 (8th Cir. 1966); Hardin v. United States, 324 F.2d 553 (5th Cir. 1963); State v. Spencer, supra [257 La. 672, 243 So.2d 793 (1971)]."
Absent a showing that the occurrence was prejudicial, we hold that the trial court's denial of the motion for mistrial was not error.
BILL OF EXCEPTIONS NO. 8
This bill was reserved when the trial court denied defendant's motion to quash the jury venire. At the hearing on the motion defendants contended that the jury venire did not represent a reasonable cross-section of the community, did not include *196 enough blacks and did not include any women. Defendants attempted to present testimony of an investigator employed by the Public Defender's Office to show the breakdown as to sex and race of the persons included in the petit venire. When the witness testified that the information he possessed had been procured from the Registrar of Voters, the court noted that the witness' testimony would not be the best evidence of information reflected by the Registrar's rolls. Defense counsel thereupon requested the issuance of an instanter subpoena for the Registrar of Voters, which request was denied by the court. The witness then proceeded to testify and stated that he had a certified copy of the breakdown of the voting populace of the parish. The State objected, contending that the person who certified the information procured from the Registrar's Office should be present to testify in person. Defense counsel requested a recess to secure the presence of the person from the Registrar's Office who certified the information and this request was denied.
At the outset, we note that the evidence which defendants offered in support of their motion to quash was not the best evidence of the facts they were attempting to establish. Therefore, the trial court's rulings on that issue were not erroneous. The burden of proof in establishing purposeful racial discrimination is initially on the defendants, whose burden it is to establish a prima facie case of deliberate discrimination. This the defendants must do by competent and relevant evidence which would tend to make out a prima facie case of deliberate discrimination. Had the defendants shown good cause for their failure to present the proper evidence at the hearing on the motion to quash, the trial court, under authority of C.Cr.P. Art. 535, could have deferred a hearing on the motion until the end of the trial. No good cause was shown by defendant; no motion to have the hearing deferred was made.
Under the circumstances we hold that the trial court's denial of the motion to quash was not error, no prima facie case of purposeful discrimination having been established.
Defendants also complain of the exclusion of women from jury service. A majority of this Court has repeatedly held that this complaint is without merit. See State v. Gray, 291 So.2d 390 (La. 1974), and cases cited therein. Moreover, this Court has held that this complaint is without merit even when the defendant is a woman. State v. Stevenson, 292 So.2d 488 (La.1974); State v. Enloe, 276 So.2d 283 (La.1973).[3]
BILL OF EXCEPTIONS NO. 9
This bill was reserved when the trial court denied defendants' motion for bond reduction, filed the day after jury selection had begun. Defendants contend that the trial court's denial of a reduction and the continuance of the allegedly excessive bond throughout trial prejudiced them in the eyes of the jury.
This Court is not aware that the jury in the instant case had knowledge of the bond set by the trial court or of the refusal of the court to reduce bond. Defendants have failed to show that the jury was aware of the amount of bond or of the trial court's denial of the motion for reduction filed after the jury selection had begun.
Under the circumstances, we find this bill of exceptions without merit.
BILL OF EXCEPTIONS NO. 10
Two days after jury selection had begun, the defendants filed a motion to have samples *197 of the LSD which was the basis of the charge analyzed by a professional analyst of their choice at the State's expense. The trial court denied the motion. In brief the defendants contend that denial of this motion constitutes a denial of equal protection and due process.
In State v. Glass, 283 So.2d 696 (La. 1973), the Court dealt with a similar problem. While we expressly declined to hold that an indigent defendant would never have the right to have independent analysis at the State's expense, we did note that the defendant in that case had not made an adequate showing that the expert analysis should have been furnished at state expense. The Glass opinion noted the defendant's failure to furnish the trial court with information concerning the anticipated cost of obtaining independent analysis or of the particular qualifications of the Madison, Wisconsin expert whose assistance defendant wished to obtain.
In the case at bar, the defendants did not furnish the court with the name or qualifications of any person whom they wished to have make an independent analysis; nor was a cost estimate furnished to the court. The record reflects that defendants' counsel was appointed prior to February 5, 1973; the motion to have independent analysis was not filed until April 27, 1973, two days after jury selection commenced. In its per curiam to this bill of exceptions, the trial court clearly implies that the motion appeared to be a dilatory tactic. No showing was made by defendants why the motion was not filed earlier.
We hold, therefore, that the defendants have made no showing of special circumstances which would require the appointment of an expert for independent analysis. See State v. Glass, supra. This bill of exceptions is without merit.
BILL OF EXCEPTIONS NO. 11
This bill was reserved to the trial court's denial of defendants' motion to postpone arraignment pending disposition of numerous pretrial motions. Defendants contended that postponement would enable them to more knowledgeably plead to the charge against them.
In a per curiam to this bill the trial court states that defendants were not prejudiced by denial of their motion for the reason that the court would always have allowed a change of plea under C.Cr. P. Arts. 559, 560 and 561 had the defendants subsequently decided that they wished to change their pleas.
Defendants have failed to show that they were in any way prejudiced by the denial of their motion. This bill of exceptions is without merit.
For the reasons stated hereinabove, the defendants' convictions and sentences are affirmed.
SANDERS, C. J., concurs.
NOTES
[1] The record on appeal contains twelve perfected bills of exceptions. Bills of Exceptions Nos. 4 and 5 are neither briefed nor argued and are therefore considered abandoned. State v. Richmond, 284 So.2d 317 (La.1973); State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972).
[2] Officer Spillers' testimony concerning the defendants' six or more sales of controlled dangerous substances to him and the accompanying discussions among defendants, himself, and others present when the sales took place, constituted the State's effort to discharge its duty of proving beyond a reasonable doubt the defendants' intent to distribute the LSD which formed the basis of the prosecution. Spillers testified concerning the agreement on sales price of the various drugs, the payment therefor, and the admission of at least one of the defendants that he had made prior drug sales to a person or persons other than Spillers.
[3] This writer is of the opinion that our constitutional and statutory scheme of exclusion of women jurors is unconstitutional. See my concurrence in State v. Gray, supra, and my dissents in State v. Stevenson, supra, and State v. Enloe, supra.