344 So.2d 1380 (1977)
STATE of Louisiana
v.
Percy DAIGLE.
No. 58814.
Supreme Court of Louisiana.
April 11, 1977.
*1383 Preston N. Aucoin and Gilbert Wayne Aucoin, Ville Platte, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. William Pucheu, Dist. Atty., A. Bruce Rozas, First Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
Defendant was indicted and tried for the murder of his wife, Nita Soileau Daigle, on November 17, 1972. Defendant pled not guilty and not guilty by reason of insanity and a sanity commission was appointed. After a hearing, the judge found the defendant competent to proceed with trial. The defendant was tried by a jury of twelve which returned a verdict of guilty on October 23, 1975. He was thereupon sentenced to life imprisonment. On appeal defendant relies upon thirteen assignments of error for reversal of his conviction.
Sometime prior to November 17, 1972, defendant and his wife (the murder victim) separated. On that date defendant allegedly met his estranged wife at an intersection in Ville Platte and she called him "flat nose" and told him she had just been to see her "boyfriend." Shortly after this confrontation, defendant found his wife at her new residence, and in full view of her mother and two other witnesses, he shot his wife three times with a gun he had purchased several days before. He then put the gun in a paper bag which he placed in his car. He left his car door open and walked to a nearby service station where the police apprehended him.
ASSIGNMENT OF ERROR NO. 1.
Defense counsel questioned prospective juror Ms. Rose Marte Johnson concerning the defense of insanity. She stated that she could apply the law to the effect that if the evidence showed defendant did not know right from wrong at the time of the murder, defendant would be excused from criminal responsibility. However, she then stated: "I feel it would be a hard thing to prove, but if it can be proven I feel that I can go along with it." After some further examination defendant requested that the prospective juror be excused for cause because she harbored a fixed opinion which would yield only after evidence was presented. The judge overruled the request and, since defendant had exhausted his peremptory challenges, he noted an assignment of error.
A reading of this prospective juror's voir dire in full reveals that she was an impartial witness; she was merely of the opinion that to show someone did not know right from wrong at a particular time would be difficult to prove (which it is). As the state points out, she was recognizing (without knowing it) the presumption that a person is sane and responsible for his acts. The juror stated that if competent evidence could convince her that defendant did not know right from wrong at the time of the murder then she would render a verdict accordingly and would not refuse to apply the applicable law. Furthermore, she stated that she believed someone could be legally insane at the time of the murder and *1384 then resume his sanity so as to be permitted to return to society.
The statement of the juror upon which defendant principally relies was that she couldn't imagine what would cause someone not to know right from wrong; she said she couldn't "imagine what would cause this," but she would be willing to listen. When she made this statement the judge explained that the jurors have to determine the facts, but that they must apply the law as given, and the law in this regard was that a man is not criminally responsible if medical evidence and other proof showed that some mental disease or defect prevented the defendant from distinguishing right from wrong. Asked if she could apply that law the juror replied in the affirmative. Finally the juror stated that she honestly believed that someone could kill another person without knowing right from wrong at that particular time and that if the evidence convinced her that this was the case, she would steadfastly vote that way in the jury room and not yield even if the vote was eleven to one.
We conclude that the juror was an impartial witness and would follow the law and apply it and would seriously consider the evidence on the sanity issue. The mere fact that a juror believes that insanity at the time of the crime would be difficult to prove is not grounds for excusal for cause.
The assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 2.
After defendant pled not guilty and not guilty by reason of insanity, he requested that a sanity commission be appointed. The judge appointed a sanity commission to inquire into defendant's present capacity and the mental condition he allegedly had at the time of the commission of the murder. Defendant assigns as error the alleged refusal of the court to permit the members of the sanity commission to testify at the sanity hearing as to defendant's sanity at the time of the commission of the offense. As authority for his proposition defendant relies upon Article 650 of the Code of Criminal Procedure which provides in part that when a defendant makes the dual plea "the court may appoint a sanity commission. . . to make an examination as to the defendant's mental condition at the time of the offense." He argues on the authority of this article that when a judge has ordered the commission to inquire into defendant's sanity at the time of the murder, defendant is entitled at the sanity commission hearing to examine the commission members as to their findings in this regard.
There is no merit to defendant's assignment, for the record indicates that the judge did not refuse to permit the members of the sanity commission to testify at the sanity hearing relative to defendant's insanity at the time of the commission of the offense. In fact, the judge ruled that defense counsel could inquire into defendant's insanity at the time of the commission of the crime insofar as it was pertinent to the issue at the hearing, namely defendant's present capacity to stand trial. The record clearly indicates that counsel's objection was directed at the trial court's refusal to rule on defendant's insanity at time of commission of the offense.
The question of present capacity to stand trial is a question for the judge (C.Cr.P. art. 647) while the issue of defendant's insanity at the time of the commission of the offense is a fact question reserved for the jury. State v. Link, 301 So.2d 339 (La.1974). Thus defendant is not entitled to have the court rule on defendant's ability to distinguish between right and wrong at the time of the murder. State v. fiasco, 216 La. 365, 43 So.2d 761 (1950); State v. Cook, 215 La. 163, 39 So.2d 898 (1949). Defendant was not barred from interrogating commission members as to their opinions with respect to sanity at the time of commission of the offense. The judge simply properly ruled that it was not his province to rule upon that issue.
ASSIGNMENT OF ERROR NO. 3.
In this assignment defendant contends that the trial judge erred in ruling the *1385 defendant had the capacity to proceed. He contends that he was suffering amnesia as to events occurring immediately before until after the shooting and that on this account he was incapable of assisting his counsel in his defense at trial. He relies upon Article 641 of the Code of Criminal Procedure which provides:
"Mental incapacity to proceed exists when, as a result of a mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense."
Inasmuch as the medical experts differed as to whether in fact defendant actually suffered amnesia concerning the events surrounding the shooting, we need not consider whether amnesia alone requires a finding that defendant cannot assist his counsel.[1]
The trial court's finding defendant able to assist counsel in his defense is supported by the record. Thus there is no merit to the assignment.
We find no error in the trial court's determination that defendant had the capacity to proceed.
ASSIGNMENT OF ERROR NO. 4.
The judge refused to give defendant's requested charges numbers one and two which were to the following effect:
"Article 656 [654] of the Louisiana Code of Criminal Procedure, in pertinent part, provides that:
"When a verdict of not guilty by reason of insanity is returned in a capital case, the court shall commit the defendant to a proper state mental institution for custody, care, and treatment.'
"Therefore, if you vote to acquit Percy Daigle by reason of insanity, this Court shall commit him to a proper state mental institution.
"The word `shall' is mandatory and means the Court has to commit him to said institution. The Court has no choice but to commit him."
* * * * * *
"If you return a verdict of not guilty by reason of insanity, the Court shall commit Percy Daigle to a proper state mental institution for custody, care and treatment."
The judge correctly refused to give defendant's requested charges. Code of Criminal Procedure Article 807[2] provides that a requested special charge "need not be given if it is included in the general charge." The judge gave a very lengthy charge as to the legal effect of not guilty by reason of insanity in a capital case. The charge quoted verbatim the relevant articles in the Code of Criminal Procedure dealing with the mandatory commitment, the hearing to determine, after six months, whether the defendant may be released, the one year delay between successive applications to be released, the appointment of a commission to report whether defendant should be released and other related matters. In other words, the court charged the jury with the complete procedure, immediately after the verdict is rendered and subsequently. The general charge, therefore, conveyed defendant's requested charge *1386 number two and part of charge number one. The only dispute is apparently whether the judge should have given that part of the requested charge which relates that the word "shall" is mandatory.
It is true that Article 5 of the Code of Criminal Procedure states that "shall" means "mandatory." Obviously, defendant wanted to adequately impress upon the jury that the judge had absolutely no discretion in the matter. However, the general charge adequately conveyed the idea that this would be the result (i.e., that defendant would be sent to an institution) not that it might be. In addition, defense counsel both in opening and closing statements pointed out that the jury would not be turning the defendant loose but that he would necessarily be sent to an institution. The jury was sufficiently apprised of the fact that commitment was mandatory.
Because the judge's charge conveyed the substance of both requested charges, the assignment lacks merit.
ASSIGNMENT OF ERROR NO. 5.
The judge refused to give defendant's requested special charge number 29 which read:
"1) Was Percy Daigle, at the time of the commission of the homicide, as a matter of fact, affected with a disease of the mind, so as to be idiotic or otherwise insane? (2) If such be the case, did he know right from wrong, as applied to the particular act in question? If he did not have such knowledge, he is not legally responsible. (3) If he did have such knowledge, he may nevertheless not be legally responsible, if the two following conditions concur: a) If, by reason of the duress of such mental disease, he had so far lost the power to choose between the right and wrong and to avoid doing the act in question as that his free agency was at the time destroyed; b) and if at the same time the homicide was so connected with such mental disease, in the relation of case and effect, as to have been the product of it solely.
"If you answer `yes' to `1' and `no' to `2', you must vote to acquit.
"If you answer `no' to `1' and `no' to `2', but `Yes' to `a' and `b', you must still vote to acquit."
As authority for the proposition that this charge is "wholly correct and pertinent" and does not require "qualification, limitation, or explanation" (see C.Cr.P. art. 807 quoted in Footnote 2), defendant argues that this charge has been approved by the Supreme Court since it was first cited in State v. Lyons, 113 La. 959, 37 So. 890 (1905). It is conceded that the general charge did not include the substance of part (3) of the requested charge. In fact, the judge in his general charge gave parts (1) and (2) but specifically deleted part (3). Thus, this assignment presents the issue of whether the requested charge was "wholly correct and pertinent" and did not require "qualification, limitation, or explanation."
Defendant's reliance upon State v. Lyons, supra., is misplaced. In Lyons the defendant requested that the judge charge the jury as to the insanity test of "irresistible impulse." As authority for defendant's position in Lyons the Court cited Parsons v. State, 81 Ala. 577, 2 So. 854 (1887) which approved the charge cited above. The Court, in affirming the judge's refusal to give the charge on "irresistible impulse" stated that the general charge in fact given was broader and more favorable to the defense than the charge approved in Parsons. Thus, the Court did not in any way approve the quoted charge and defendant has not cited any other cases in this jurisdiction where refusal to give the irresistible impulse charge has been found erroneous.
The judge properly refused to give part (3) of the charge. An analysis of the language reveals that the charge is attempting to set forth the insanity test of "irresistible impulse." Our Court has thus far refused to adapt that test jurisprudentially, saying that it is a matter for the legislature. State v. Johanson, 332 So.2d 270 (La.1976); State v. Berry, 324 So.2d 822 (La.1975). It has been specifically held that *1387 irresistible impulse is not a proper inquiry when legal insanity is at issue. State v. Johanson, supra.; State v. Berry, supra. Therefore, since the charge defendant requested the court give attempts to set forth the "irresistible impulse" test, the requested charge was not "wholly correct and pertinent" and was properly rejected.
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. 6.
The judge refused to give defendant's requested special charge number 36 which read:
"If you find from the evidence that the personal peculiarities, eccentricities, fits of temper or rage of Percy Daigle, as well as from the other evidence that Percy Daigle could not distinguish or choose right from wrong at the time of the homicide, you must vote to acquit."
Defendant contends that the trial judge should have given this instruction because State v. Swails, 226 La. 441, 76 So.2d 523 (1954) recognized that lay opinion on sanity is permissible by witnesses who have observed the defendant's "speech, manner, habits and conduct of such person."
In State v. Whisenant, 247 La. 987, 175 So.2d 293 (1965), the Court stated that in determining legal insanity the jury should consider the commissioner's report, the testimony of experts and lay witnesses, and the conduct and actions of the accused. Thus, to the extent that this charge attempted to convey this rule of law it was correct. However, the judge in his general charge noted that on the sanity issue the jury should consider all of the evidence, language which infers that the jury should consider lay as well as medical evidence. In addition, the judge gave defendant's requested charge number 30 which read:
"In Louisiana, the fact that a person is unable to discriminate between right and wrong is best ascertained not by the opinion of any medical witness nor by any medical theory, but by the acts of the individual himself.
"If you find that by the acts of Percy Daigle, he was unable to discriminate between right and wrong at the time of the homicide, you must vote to acquit."
Thus, the judge properly rejected the charge as "repetitious" as it was included in the general charge and in another special charge (number 30) which was given.
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. 7.
The judge refused to give defendant's requested special charge number 37 which provided:
"Insanity does not have to be established beyond a reasonable doubt.
"If you feel that there is enough evidence to warrant the insanity of Percy Daigle at the time of the homicide, even though there is evidence to the contrary, you must vote to acquit."
Defendant argues in this assignment of error that the judge's refusal to give this charge constitutes reversible error. This assignment lacks merit because the judge on numerous occasions in his charge stated that the state had the burden to prove beyond a reasonable doubt the guilt of the accused, but the defendant had the burden of proving by a preponderance of the evidence that he was legally insane at the time of the murder. The standard of preponderance of the evidence is the proper test. C.Cr.P. art. 652. Thus, the charge was included within the general charge. Furthermore, defendant's charge is not wholly correct but required clarification because it did not clearly set forth that defendant's burden of proof is by preponderance of the evidence. The charge therefore was properly refused.
ASSIGNMENT OF ERROR NO. 8.
Defendant was initially indicted on November 30, 1972 for the murder. Before this indictment was nolle prossed defendant was indicted by a different panel of grand jurors on February 18, 1975 for the same murder. Defendant moved to quash the *1388 second indictment (the one under which he was prosecuted) contending that it denied him due process of law and in brief he argues that the second indictment "smacks of double jeopardy" and that the Code of Criminal Procedure only envisions one indictment being "in esse" at a time. The judge overruled the motion to quash and this ruling forms the basis of this assignment of error.
As the state points out, defendant was originally indicted in 1972 by an all-male grand jury. Prior to trial in 1975 the United States Supreme Court in Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), held that exclusion of women from juries was unconstitutional. Although a later case announced that Taylor would not be applied retroactively, the district attorney thought it would be wise to get another indictment in accordance with the Taylor guidelines. Therefore, a grand jury was selected from a venire which did not exclude women.
The assignment does not have merit. Jeopardy does not attach until the first witness is sworn at the trial on the merits. C.Cr.P. art. 592. Nor do we find merit in defendant's contention that he was denied due process of law.
We cannot conceive of how defendant might have been prejudiced by the district attorney's precautionary efforts to avoid possible reversible error by procuring a second indictment from a properly constituted grand jury and thereafter entering a nolle prosequi to the first indictment. Therefore, defendant's arguments are without merit.
ASSIGNMENT OF ERROR NO. 10.
Defendant moved for a new trial on the basis that 1) the verdict was contrary to the law and the evidence and 2) the bill of exceptions reserved during trial show error committed to the prejudice of the accused. However, in this assignment he argues that this Court should order a new trial on the basis of Article 851 of the Code of Criminal Procedure which provides in part that:
"The court, on motion of the defendant, shall grant a new trial whenever:
* * * * * *
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right."
He argues that on the basis of this article a new trial should be granted because the evidence preponderates that defendant did not know right from wrong.[3]
We believe that defendant makes here a very serious argument, but we conclude that it has no merit because the assignment presents nothing for our review. Defendant did not in the trial court move for a new trial under Article 851(5). Inasmuch as the trial judge was not afforded an opportunity to entertain the plea for a new trial under the plenary authority afforded him under Article 851(5), there is no ruling of the trial court in this regard which we are able to review.
The scope of appellate review in this Court is limited to errors patent on the face of the record and errors committed in the trial court and designated in the assignment of errors. There was no ruling of the trial court as to which error might now be alleged since defendant did not move for a new trial on the basis of Article 851(5), nor is the purported error discoverable by a mere inspection of pleadings and proceedings without inspection of the evidence. C.Cr.P. art. 920. For this reason, we cannot review on appeal defendant's contention that the interests of justice require that he should be afforded a new trial.
ASSIGNMENT OF ERROR NO. 11.
Five days after defendant was indicted he was arraigned without counsel *1389 and he pled "not guilty." Subsequently, counsel was appointed and the court attempted to arraign him anew. Defense counsel advised the court that he was objecting to the arraignment and that his client was merely attempting to "change his plea." The defendant then pled "not guilty and not guilty by reason of insanity." (The defense attorney was obviously attempting to preserve a technical error in that defendant was arraigned without counsel and he hoped that a mere change of plea with counsel would not cure the defect.) A few days later the district attorney advised the court that to be safe defendant should be arraigned again. Defense counsel objected, told his client to stand mute and not listen to the reading of the indictment by stopping his ears with his fingers. Defense counsel objected to the court "forcing his client to be arraigned." The defendant was then forced to hear the indictment but did not plead, whereupon the court entered a plea of "not guilty." Finally, after the second indictment was filed in 1975 defendant was again arraigned and he pled not guilty and not guilty by reason of insanity. Defendant contends this procedure is ground for reversal.
We cannot imagine how defendant might have been prejudiced by the foregoing procedures. The assignment lacks merit.
ASSIGNMENT OF ERROR NO. 12.
Defendant complains that the trial judge erroneously overruled his motion to quash the jury venire on grounds that it violated his right to a fair trial by a representative cross-section of the community. At the hearing on his motion, defendant established that the only list used by the jury commissioners in order to draw up the venire was one furnished by the Registrar of Voters. Although the Commissioner stated that if other persons offered their service to the Commissioners they would be put on the list, he admitted that none had done so except three or four women who had requested to serve in the days before Taylor v. Louisiana, supra. forced a change in the state procedures in jury composition.
The Louisiana Constitution of 1974 states that "Every person charged with a crime . . . is entitled to [an]. . . impartial trial." La.Const. art. I, § 16. Likewise, the sixth amendment to the Constitution of the United States guarantees to criminal defendants in state courts the fundamental right to trial by a jury which is a truly representative cross-section of the community. Taylor v. Louisiana, supra.; Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972); Duncan v. Louisiana, 391 U.S. 145, 194, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). These guarantees have been implemented in Louisiana by statute, jurisprudence, and Supreme Court rules. C.Cr.P. arts. 401-419; State v. Procell, 332 So.2d 814 (La.1976); Rules of the Supreme Court XXV and XXVI. These provisions insure that juries in Louisiana are selected from a fair cross-section of the parish and that all qualified citizens have the opportunity to be considered for jury service.
Defendant's contention that the fact that the general venire was selected exclusively from voter registration rolls does not comport with these federal and state guarantees is not a frivolous one. The system used in Evangeline Parish is very different from the system we approved in State v. Millsap, 258 La. 883, 248 So.2d 324, 329 (1971) where we described the system used in preparing that venire in this way:
"Each of the five jury commissioners submits lists of names from which individuals are selected to supplement the general venire. These lists are, for example, telephone books, light meter lists, voter registration rolls, union memberships, employee lists of large companies, a Junior Chamber of Commerce membership roster and church memberships.

*1390 "From these lists, names are selected at random, such as every third name, and no effort is made to include or exclude any particular class. The lists contain names from all walks of life and all geographic areas. The venire is truly composed of a cross section of the eligible population, selected `impartially' in keeping with the mandate of Article 408 of the Code of Criminal Procedure."
However, we cannot say that the use of voter lists without any showing in the record of any discrimination against a class of people establishes that the jury pool did not represent a fair cross-section of the community. See State v. Anderson, 315 So.2d 266 (La.1975); State v. Douglas, 256 La. 186, 235 So.2d 563, cert. denied 401 U.S. 914, 91 S.Ct. 888, 27 L.Ed.2d 814 (1970). Therefore, we find no merit in this assignment.
ASSIGNMENT OF ERROR NO. 13.
A gun which was bought by defendant and used in the slaying was seized by the police and introduced into evidence. Defendant had filed a motion to suppress this evidence but the motion was overruled. This ruling forms the basis of this assignment of error.
The evidence at the motion to suppress reveals that defendant drove into his wife's driveway, got out of the car and shot her three times. He then placed the gun in a paper bag, placed the bag on the front seat of the car, left the car door ajar and walked away. The police arrived at the scene some ten minutes later and the officer who seized the weapon testified that the victim was then some five or six feet from the car and was visibly shot. He knew the victim was defendant's wife and knew that the car was the defendant's but did not know that defendant had shot her at that time. He walked by the open door and noticed the gun on the front seat because the bag was open and the gun was clearly visible from outside the car because the opening of the bag faced the open door. He merely reached in the car and secured the gun.
Defendant contends that this "search" was not incident to a lawful arrest, was not a consent search and was not a search of an automobile under exigent circumstances because the car was not in danger of being moved. However, he does not even attempt to counter why this evidence was not seized as being in open (or "plain") view. In fact, the record reveals that there was no "search" at all but the evidence was seized because it was in plain view. The officer obviously had a right to be where he was (reported homicide, body few feet from car, car on victim's property) and the evidence was seen inadvertently (bag open and facing open door). The court properly ruled that the evidence was constitutionally seized.
This assignment lacks merit.
Accordingly the conviction and sentence of defendant are affirmed.
SUMMERS, J., concurs.
NOTES
[1] In this regard, however, see State v. Gray, 291 So.2d 390 (La.1974) wherein this Court quoted approvingly from State v. Swails, 223 La. 751, 66 So.2d 796 (1953) and stated that the very fact that appellant does not remember anything concerning his alleged criminal acts may be of material aid to his counsel in their presentation of case of insanity.
[2] Article 807 provides in full: "The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.

"A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given." (emphasis added)
[3] In addition, in his second supplemental brief defendant contends that this Court should abandon the "right or wrong test." This contention has already been answered in our discussion of assignment of error number five.