444 So.2d 1185 (1984)
STATE of Louisiana
v.
Lee Ray JACKO.
No. 82-KA-2195.
Supreme Court of Louisiana.
January 16, 1984.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. William Pucheu, Dist. Atty., Richard W. Vidrine, Asst. Dist. Atty., for plaintiff-appellee.
Preston N. Aucoin, Ville Platte, for defendant-appellant.
CALOGERO, Justice.
Defendant Lee Ray Jacko was charged by bill of information with forgery, a violation of La.R.S. 14:72. Jacko was tried by jury, convicted, and sentenced to serve seven and one-half years imprisonment. On appeal he argues five assignments of error. We find two related assignments of error (they concern unlawful selection of the general venire and the petit jury panel) meritorious. We therefore reverse defendant's conviction and remand the case to the district court.
By assignments Number Two and Number Three defendant contends that the trial court erred in denying his motions to quash the general venire and his petit jury panel, each of which "does not pass Constitutional muster." Specifically, defendant argues that the general venire was not selected impartially as required by La.C.Cr.P. art. 408, that ministers, attorneys and persons over the age of seventy were routinely *1186 excluded, and that there was a systematic exclusion of blacks and non-registered voters from the general venire.
The system used in Evangeline Parish for selecting the general venire was described by various parish employees who testified at the hearing on defendant's motion to quash the venire. The general venire is selected exclusively from voter registration rolls.[1] An employee of the jury commission, Ms. Phyllis Pitre, is stationed at the office of the Registrar of Voters. Her job entails gathering names for the general venire list, which names are drawn from the voter registration list and typed onto jury cards. These jury cards, which contain only the names and addresses of the voters, are given to the Clerk of Court at irregular intervals. When juries are needed the cards are selected from barrels in which they have been placed by the Clerk of Court. Testimony by Ms. Pitre indicates that she routinely avoids selecting for the general venire ministers, attorneys and persons over the age of seventy. Thus, Ms. Pitre, apparently aware of the personal exemptions permitted by Supreme Court Rule XXV[2] takes it upon herself to exclude these certain segments of the population because those persons have the right to choose to be excused. As a result, certain persons qualified to serve on juries are never given an opportunity to serve.[3]
This case is directly governed by our decision in State v. Procell, 332 So.2d 814 (La.1976). In Procell, we were faced with a situation similar to that presented in the instant case, where persons entitled to claim the exemption provided by Supreme Court Rule XXV were automatically excluded from the general venire by the Sabine Parish Jury Commission. In Procell we noted:
The Louisiana Constitution of 1974 states that "Every person charged with a crime ... is entitled to (an) ... impartial trial." La. Const. art. I, § 16 (1974). This guarantee of an impartial trial continues the predecessor provision in the 1921 Constitution. La. Const. art. VII, § 41 (1921). These general provisions which extend to criminal defendants the right to an impartial trial apply to the selection of the general venire by the jury commission of each parish. C.Cr.P. arts. 408, 409. Although the names of the persons which make up the general venire must be selected impartially, each of those persons may not actually have to serve on a jury because he may be exempt from jury service. State v. Procell, 332 So.2d at 815. (Footnotes omitted.)
Commenting on Supreme Court Rule XXV we stated:
Our rule was passed with the stated purpose of guaranteeing "that all qualified citizens shall have the opportunity to be considered for jury service." Under the rule certain classes of qualified citizens are granted a personal exemption from jury service. The rule directs no action on the part of the jury commissioners whose preparation of the general venire is directed by Code of Criminal Procedure Articles 408 et seq. Instead, as we held in State v. Gaines, 315 So.2d *1187 298, 300 (La.1975), the rule "effectively (prohibits) the exclusion from the jury selection process of any qualified segment of our citizenry ...." State v. Procell, 332 So.2d at 816-817.
Then, in reversing Procell's conviction we held:
Thus, under the system employed in Sabine Parish, certain persons qualified to serve on juries are never given an opportunity to serve because the jury commissioners exclude their names from the general venire on the basis that they fall under exemption set out by the rule, a rule which allows them, if they choose, to serve notwithstanding the claimable exemption. This exclusion clearly contravenes the letter and spirit of the law. It means that the general venire is not selected impartially, as our constitution and statutes require, and that the general venire was improperly constituted under our Rule XXV, Code of Criminal Procedure Article 403, and Louisiana Constitutional Articles I, § 3 and V, § 33 (1974). State v. Procell, 332 So.2d at 817.
So too, in the instant case, in order to give effect to these provisions, we are required to reverse the conviction of defendant Jacko and remand his case to the district court for retrial by a petit jury chosen from a general venire which is to be selected according to law.
Although we do not base our decision to reverse defendant's conviction on the following ground, we note that defendant contends that there was a systematic exclusion of blacks from the general venire. This assertion is based, for the most part, on the fact that although blacks comprise 21.1% of the voters of Evangeline Parish, the venire from which defendant's jury was chosen had a black representation of only 5.33%. Defendant also contends that the venire for the previous week contained only one black person out of sixty (1.67%).[4] Without reaching the issue of the racial composition of the venire we find it necessary to comment on the disturbing implications of this claim and its relation to the system used for selecting the general venire in Evangeline Parish.
This Court has previously approved the exclusive use of voter registration rolls[5] for selection of the general venire in this very Parish, Evangeline, there having been no showing in the record of discrimination against a class of people. State v. Daigle, 344 So.2d 1380 (La.1977). In Daigle, however, the record did not reflect the method by which names from the voter registration rolls were selected. In this case the record shows that the names were not drawn indiscriminately from voter registration rolls. Rather, they were selected based on Ms. Pitre's judgment that the individual selected would make a good juryperson. The process was described, in Ms. Pitre's own words, as follows:
Well, I take the names frommost of the time I'm there ... (in the Registrar of Voters' Office) ... doing my work with the jury cards or something, and a person will come in to register, and I'll put an ear to where he's talking or like I'll take the name from their certificate if he signs to meif its on a paper or something. I don't put them down but for my knowledge, from the way the person talk that I think he could serve on the jury, then I put him down ... (for the general venire).
*1188 Although it may not be clear from the record that this selection process has resulted in systematic exclusion of a disproportionate number of blacks, we do note that the possibility for discrimination is very evident under this system, where selection of the venire is controlled by one person who uses ill-defined and subjective criteria. While underrepresentation of blacks on the venire from which Jacko's petit jury was chosen may have been accidental, we cannot ignore the disturbing possibility that it was the result of the personalized selection process.

Decree
For the reasons assigned, the conviction and sentence of this defendant are reversed, and the case is remanded for retrial.
CONVICTION AND SENTENCE REVERSED; REMANDED FOR RETRIAL.
MARCUS, J., concurs.
WATSON and LEMMON, JJ., dissent and assign reasons.
WATSON, Justice, dissenting.
The showing made is not sufficient to reverse the defendant's conviction. While undesirable, the system of not calling ministers, attorneys, and persons over seventy years of age, who would be entitled to claim an exemption from jury service, does not show such a pattern of discrimination against a class of people as to deny defendant of trial by a representative cross-section of the community. While the court should direct that the jury commission of Evangeline Parish change its practice, there is no necessity to reverse defendant's conviction on this ground.
Therefore, I respectfully dissent.
LEMMON, Justice, dissenting.
This court can correct the problem outlined in the majority opinion by issuing an order under our supervisory jurisdiction to terminate the improper practices used to select the jury venire for all criminal cases. It is not necessary, however, to reverse this conviction, because there is no showing of an unconstitutionally selected jury venire in this case. See La.C.Cr.P. Art. 419. Moreover, the evidence supporting the conviction was overwhelming.
NOTES
[1] In State v. Daigle, 344 So.2d 1380 at 1389 (La.1977), we held that, absent a showing of discrimination against a class of people, the exclusive use of voter registration rolls does not offend the constitutional guarantee of trial by a jury which is truly representative of a crosssection of the community.
[2] Supreme Court Rule XXV Section 2, provides for the exemption from jury duty for certain groups or occupational classes such as public officers in the executive, legislative and judicial branches, attorneys, ministers, and anyone over the age of seventy. These are personal exemptions and any member of an included class may waive the exemption.
[3] Supreme Court Rule XXVI, Section 2(a)(ii), states: "The jury Commission shall impartially select a general venire composed of all qualified persons, except: ... Those who are exempt and who, having been so advised, choose to claim the exemption." (emphasis added). There is nothing in the record to show that Ms. Pitre only excluded those citizens who were advised that they could claim the exemption, and, having been so advised, chose to be exempt. On the contrary, her testimony indicates that if an individual falls within an exemptable class, unless that person requests jury service, she will automatically exclude his name from the general venire list.
[4] Counsel for defendant testified that for the past three or four years he has reviewed every jury venire list. He stated that in the last two years he can't recall ever having seen a jury venire list with more than seven Negroes. In effect he was testifying that over that two year period the percentage of Negroes included in the venire had regularly fallen far short of 21.1%, the percentage of registered voters who are black and form part of the pool on which Ms. Pitre drew.
[5] We do note, however, that in State v. Millsap, 258 La. 883, 248 So.2d 324, 329 (1971) we approved the use of a selection system which entailed the use not only of voter registration rolls but also "... telephone books, light meter lists... union memberships, employee lists of large companies, a Junior Chamber of Commerce membership roster and church memberships."