GUIDRY, Judge.
The défendant, Helen Faye Wilson Arm-stead Kahey, was indicted by the Sabine Parish grand jury for the second degree murder of Arthur Armstead Kahey, in violation of La.R.S. 14:30.1. Defendant filed a motion to quash the grand jury indictment urging that the selection procedure employed to empanel the grand jury was illegal. The trial court denied the motion to quash. Subsequently, the defendant pled guilty to the charge of manslaughter reserving her right to appeal the trial court’s denial of the motion to quash. The trial court sentenced the defendant to eight years at hard labor. Defendant appeals her conviction and sentence urging the following two assignments of error:
1. The trial court erred in denying her motion to quash the grand jury venire.
2. The trial court erred in imposing an excessive sentence.
ASSIGNMENT OF ERROR NO. 1
Defendant contends that the trial court erred in denying her motion to quash the grand jury venire. Specifically, defendant argues that the list of prospective jurors used to empanel the grand jury that returned a true bill was not selected from a cross section of the general community of Sabine Parish.
*545 At the hearing on the motion to quash, the following stipulation was made regarding the method of selecting the general venire in Sabine Parish:
“That approximately five hundred to two thousand names are selected from the voter registration rolls of Sabine Parish at random by lot. These are put on strips of paper and they are then drawn by jury commission. And these five hundred to two thousand voters are then mailed a questionnaire, which we would offer, and introduce into evidence as Joint — 1. These are then returned to the Clerk of Court, who then meets with the jury commission, who go through the questionnaires. And they then select those which are qualified to be on the grand jury, or the jury venire. Mr. Wright would also testify that the jury commission excuse any persons who meet the exemptions set forth on the questionnaire; those that they know are extremely ill and have become ill since the signing of the questionnaire; and those which the judge would ordinarily excuse that they have personal knowledge of. He would testify that there are five commissioners on the jury commission. There are no blacks on the jury commission. That the ratio of the general venire approximates the population of the parish insofar as the different racial balances and sexual balances. Once the general venire is selected, then slips of paper are made. And then they go about drawing the number of people who are called by the court for each venire, at random, by lot.
THE COURT: Is there anything you want to add?
MR. DUMAS: Yes, sir: Also, they use the voter registration rolls to get the names. And he stated that there are approximately thirteen thousand registered voters. That the primary source they use. He said it was about the only source they use. And he stated that if they would know of someone — MR. LAWSON: Who is not registered to vote, right.
MR. DUMAS: —who is not registered to vote, if one of the commissioners would know, they would send them a questionnaire, also. If they would have personal knowledge or feel that they would qualify. And if they would know of someone who is sick or ill, if they have personal knowledge of it, that they would excuse them.
I think that’s it, Judge.”
At the outset, we note that the exclusive use of voter registration rolls to select the general venire is permissible absent a showing of discrimination against a class of people. State v. Daigle, 344 So.2d 1380 (La.1977). The defendant, in this case, has failed to establish that the use of the voter registration rolls by the Sabine Parish jury commission results in discrimination against any class of people.
Regarding the use of the questionnaire by the jury commission, Louisiana Supreme Court Rule XXYI authorizes its use. Supreme Court Rule XXVI states in pertinent part:
“Section 2. Duties of the Jury Commission.
(a) The Jury Commission shall impartially select a general venire composed of all qualified persons, except:
(i) Those who are classified as excluded.
(ii) Those who are exempt and who, having been so advised, choose to claim the exemption.[1]
*546 (iii) Those who are timely excused by the court.
(b) Qualification, as well as those above stated exceptions in paragraph (a)(i), (ii), and (iii), may be ascertained by the jury commission on the basis of verified documented information available to it at the time of selection of the general venire.
(c) Unless such verified documented information is available to the jury commission at the time of impartially selecting, revising or supplementing a general venire, all persons randomly chosen shall, not to exceed the required number, be impartially selected as the general venire.
(d) Alternatively, the jury commission may determine qualification as well as the exceptions set forth in (a) above, on the basis of verified information obtained by means of an appropriate written questionnaire mailed to each person under consideration for impartial selection, revision or supplementation of a general venire. ” (Emphasis added.)
In State v. Reid, 340 So.2d 551 (La.1976), the court was called upon to decide whether the method of selecting the general ve-nire in Calcasieu Parish conformed with the law. The particular objection raised by the defendant in Reid concerned the parish’s circulation of a questionnaire to prospective jurors. The questionnaire was designed to aid the jury commission in determining the qualifications of persons to serve as jurors and whether or not, if called for jury duty, they would claim an exemption to which they may be entitled by virtue of age, occupation or previous jury service. In finding the system employed in Calcasieu Parish acceptable, the court stated:
“It is undisputed that the jury commission has the authority to exclude unqualified persons from the general venire. Inasmuch as physical infirmity is clearly a disqualification from jury service, we are of the opinion that the attempt to gather documented information by questionnaire concerning the medical condition of prospective jurors is a legitimate exercise of the authority vested in the jury commission.”
Additionally, the court noted:
“Since the list of exempt classes is exclusive and the right to claim an exemption absolute, it is clear that, whether performed by a judge or a jury commission, the act of excluding an exempt person from the general venire is a purely ministerial function. While the code of criminal procedure in enumerating the duties of the jury commission does not expressly authorize the performance of this function, neither does it by direction or implication prohibit it. This court has recognized in the passage of its new rule concerning the selection and constitution of a general venire that the jury commission is an appropriate body to exclude the names of those claiming lawful exemptions. Moreover, we have specifically authorized a questionnaire process for ascertaining qualifications and claimed exemptions. We are unable to hold, therefore, that the actions of the Calca-sieu Parish jury commission in excluding from the general venire persons claiming lawful' exemptions are illegal.” (Footnotes omitted.)
Recently, in the case of State v. Jacko, 444 So.2d 1185 (La.1984), the Louisiana Supreme Court scrutinized the method of selecting the general venire in Evangeline Parish and found it to be illegal. The court reasoned that the jury commission of Evangeline Parish could not simply take it upon themselves to exclude prospective jurors whom they knew had the right to claim an exemption; the individual must have taken affirmative action (e.g. the questionnaire) to indicate that they claimed an exemption.
Although the record in the present case does not include a copy of the questionnaire utilized by the Sabine Parish jury *547 commission, the stipulation entered into by the State and the defense illustrates that the jury commission excludes those individuals who have claimed an exemption on the questionnaire or have disclosed that they suffer from a physical infirmity which would disqualify them from jury service. See La.C.Cr.P. Art. 401. According to Reid, the jury commission’s procedure accords with the law in this regard. However, the stipulation reveals that the commissioners also exclude those individuals that they know to be extremely ill and have become ill since the signing of the questionnaire as well as those persons who would ordinarily be excused by the judge. Under Jacko, this procedure is improper since the commissioners make these decisions based upon their own personal knowledge not on verified information as required by Supreme Court Rule XXYI. Although this latter procedure is improper, the record does not reflect that the exclusion of persons from jury service by the jury commissioners in Sabine Parish on personal knowledge occurred with any frequency such as was the case in Jacko where the system itself for selecting the general venire was such that an employee of the jury commission routinely avoided selecting for the general venire all individuals exempt under Supreme Court Rule XXV. Additionally, there is no showing that this practice was followed in the selection of the particular general venire in question or that the general venire so selected did not represent a true cross section of the general community of Sabine Parish. In the latter connection, to the contrary, the stipulation reflects that the ratio of the general venire approximates the population of the parish as to racial balance and sexual balance. Under these circumstances, although the improper practice above mentioned should be discontinued, we conclude that this single impropriety in the procedure followed for the selection of the general venire in Sabine Parish does not translate into an unconstitutionally composed general ve-nire.
The defendant has made no showing that the irregularities complained of resulted in the systematic exclusion of certain classes of people nor has she demonstrated wherein she has suffered any injury from the composition of the general venire. See State v. Reid, supra. We find this assignment of error to be without merit.
ASSIGNMENT OF ERROR NO. 2
By this assignment of error, defendant contends that the sentence imposed by the trial court is excessive. La. Const. Art. I, § 20 prohibits the imposition by law of excessive punishment. A sentence is excessive and unconstitutional if it is grossly out of proportion to the severity of the crime or if it is nothing more than the purposeful and needless imposition of pain and suffering. State v. Goode, 380 So.2d 1361 (La.1980). The penalty imposed must be so disproportionate to the crime committed, in light of the harm caused to society, as to shock our sense of justice. State v. Bonanno, 384 So.2d 355 (La.1980).
The trial judge is given wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed should not be set aside as excessive absent a manifest abuse of his discretion. State v. Abercrumbia, 412 So.2d 1027 (La.1982). However, it is also clear that a sentence that is well within the statutory maximum may be excessive under certain circumstances. State v. Sepulvado, 367 So.2d 762 (La.1979).
In the instant case, the defendant entered a plea bargain whereby she pled guilty to manslaughter with the agreement that the sentence imposed would not exceed ten years at hard labor. While it is not controlling, the plea bargain is a factor to consider in determining whether the sentence imposed in accordance therewith is excessive. State v. Smack, 425 So.2d 737 (La.1983). The maximum sentence for manslaughter is twenty-one years at hard labor. The defendant received a sentence of eight years at hard labor. Thus, the sentence received was within the maximum set by law and complied with the plea bargain as well.
*548 The facts surrounding this case were set forth as follows in the plea colloquy:
“THE COURT: Mr. Lawson, would you state the factual basis for this case?
MR. LAWSON: Yes, sir. On or about the date set forth in the bill of indictment, the minor child of the defendant, Arthur Armstead, died at the home of Sherral Kahey and Vivian Kahey and where the defendant was also living. The child died as a result of the combined debilitating effects of numerous beatings and whippings and the denial of food and water. Mrs. Wilson testified in the previous trial, and testified as to her part in that, wherein she did admit that she did, on occasion, whip the child and on occasion acted under orders from Vivian Ka-hey in denying the child food and water, and also assisted in tying the child up. As a result of all of these things, the child died.
Q. All right. Ma’am, is all of that substantially true and correct?
A. Yes, sir.”
At the sentencing hearing, the trial judge considered the factors set forth in Article 894.1 of the Code of Criminal Procedure. Although the trial judge found that the defendant had not engaged in any criminal activity before the commission of this crime, he felt that the defendant was in need of correctional treatment and that a lesser sentence would deprecate the seriousness of the defendant’s crime.
Clearly, the penalty imposed in this case is not so disproportionate to the crime committed as to shock our sense of justice. We cannot say that the trial judge abused his discretion in sentencing the defendant to eight years at hard labor.
For the above and foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.
. DOMENGEAUX, J., concurs in the result.
KNOLL, J., concurs and assigns written reasons.

. Under Supreme Court Rule XXV, the following groups are exempt from jury service:
“(a) Public officers in the executive, legislative, or judicial branches of the Government of the United States, or the State, or any subdivision thereof, who are actively engaged in the performance of official duties;
(b)Members in active service in the Armed Forces of the United States and members of
the National Guard of this State while on active service;
(c) Members of paid fire or police departments of the State or any subdivision thereof and federal law enforcement officers;
(d) Members of the following groups when regularly and actively engaged in the practice of their professions: attorneys at law, minis *546 ters of religion, chiropractors, physicians, dentists, pharmacists and optometrists;
(e) All persons over seventy years of age.”