# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT
### 19-201


**STATE OF LOUISIANA**

**VERSUS**

**STACY TYRONE JOHNSON, JR.**



**\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 13232-16
HONORABLE GUY E. BRADBERRY, JUDGE

**\*\*\*\*\*\*\*\*\***

**JONATHAN W. PERRY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\*\***

Court composed of Shannon J. Gremillion, Candyce G. Perret, and Jonathan W. Perry, Judges.



**CONVICTION AFFIRMED;**
**SENTENCE VACATED AND**
**REMANDED WITH INSTRUCTIONS.**

**Katherine M. Franks**
**Louisiana Appellate Project**
**P. O. Box 220**
**Madisonville, LA 70447**
**(225) 485-0076**
**Counsel for Defendant-Appellant:**
  **Stacy Tyrone Johnson, Jr.**

**John F. DeRosier**
**District Attorney**
**Fourteenth Judicial District**
**Jacob Johnson**
**Assistant District Attorney**
**Elizabeth B. Hollins**
**Assistant District Attorney**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, LA 70601**
**(337) 437-3400**
**Counsel for Appellee:**
  **State of Louisiana**

**PERRY, Judge.**

Defendant, Stacy Tyrone Johnson, Jr., appeals his conviction for first degree murder, a violation of La.R.S. 14:30. We affirm Defendant's conviction and remand to the trial court for resentencing.

## FACTS AND PROCEDURE

On Sunday afternoon, June 5, 2016, the Lake Charles City Police were called to a reported car crash at the intersection of Macy and Hodges Streets, involving Robert Colston ("Mr. Colston"). T.Z. and J.L., two juvenile witnesses, told the police that they observed the victim, Mr. Colston, seventy-nine years of age, driving northbound on Bilbo Street before turning eastbound on Macy Street. According to these witnesses, they observed a black male juvenile acquaintance, known to them as Stacy and later identified as Defendant, prior to the accident traveling on a bicycle; he was cycling westbound on Macy Street and then he was observed turning southbound on Bilbo Street toward N. Railroad Avenue. Shortly after Defendant left their sight, the juvenile witnesses heard a single gunshot. T.Z. ran inside to wake her mother and then called 9-1-1 to report the accident.

As the emergency medical personnel removed Mr. Colston from the truck, it became apparent he had suffered a gunshot wound in his upper back. About an hour later, Mr. Coltson died at the hospital. When his personal belongings were inventoried, it was discovered Mr. Colston had over $1,300.00 in cash on his person.

The police then transported the witnesses to the police station. After looking at a laptop, the witnesses navigated the internet, where they identified Defendant on a Facebook page. The witnesses later confirmed that after the shooting on June 5, at approximately 5:57 p.m., Defendant contacted them via cell phone, advising them to keep quiet and not to tell anyone about him having been in the area. Defendant, whose date of birth is January 11, 2000, was then arrested.

A grand jury first indicted Defendant, who was sixteen years of age at the time of this crime, with second degree murder. Subsequently, the grand jury issued an amended indictment, charging Defendant with first degree murder. On September 15, 2017, the State filed notice not to seek capital punishment; rather, it sought life imprisonment at hard labor without the possibility of parole pursuant to La.Code Crim.P. art. 878.1.

Prior to trial, the State provided notice to use multiple videos—a phone video taken about two days before the murder which showed Defendant apparently rehearsing an armed robbery and pretending to shoot someone, and videos from Facebook posted several months prior to the charged offense, showing him posing with firearms. After the trial court ruled the State could not introduce this evidence as either "integral act evidence" or "other crimes evidence," this Court granted the State's writ application, in part, and denied it in part, stating, in pertinent part:

> With respect to the "fake shooting" videos, this court finds the trial court abused its discretion in finding the videos inadmissible where the State's theory of the case offered at the hearing on September 19, 2017 is the alleged first degree murder occurred during the commission of an attempted armed robbery. It is, however, important to note that this court is merely ruling on the preliminary admissibility of this evidence. "[T]he admissibility of this [integral act] evidence is always subject to change if any of these relevant considerations change." *State v. Taylor*, 16-1124, p. 19 (La. 12/1/16), 217 So.3d 283, 296. Should the trial court find during trial that evidence of an attempted armed robbery is not at issue, the trial court may exclude the "fake shooting" videos.

> Although the State offered a theory that the murder occurred during an attempted armed robbery during the September 19, 2017 hearing, it is impossible for this court to determine the exact nature of the State's case from the bill of indictment, which simply charges that Defendant "committed First Degree Murder of Robert Colston, Sr., in violation of LSA R.S. 14:30." Additionally, while Defendant has stated intent is not an issue, but rather identity is the only issue for trial, this court recognizes "Defendant is not bound by a pre-trial statement that intent will not be contested." *Taylor*, 217 So.3d at 295. In the event Defendant presents evidence there was an accidental shooting or an alternative scenario which makes the videos relevant, the State may introduce the "fake shooting" videos as rebuttal evidence.

2

With respect to the remaining videos, this court cannot say the trial court abused its discretion in finding the prejudicial effect outweighs the probative value to the extent the videos should be deemed inadmissible as integral act or other crimes evidence under La.Code Evid. arts. 403 and 404.

> [E]ven when the other crimes evidence is offered for a purpose allowed under Article 404(B)(1), the evidence must have substantial relevance independent from showing defendant's general criminal character and thus is not admissible unless it tends to prove a material fact at issue or to rebut a defendant's defense.

*Taylor*, 217 So.3d at 292.

Accordingly, the trial court's ruling that the "fake shooting" videos are inadmissible is vacated. The State's writ is denied in all other respects.

*State v. Johnson*, 17-851 (La.App. 3 Cir. 9/20/17) (unpublished opinion).

Later, after the trial court interpreted this court's pre-trial writ ruling to mean all of the videos were admissible, Defendant sought a writ, seeking clarification of this Court's prior writ ruling. In this latter ruling, this Court stated the fake shooting video was "admissible as integral act evidence in the State's case-in-chief if the State offered evidence that the first degree murder occurred during the commission of an attempted armed robbery of the victim" and could be admissible as rebuttal evidence if relevant to a defense presented by Defendant; this Court further stated, "the trial court did not abuse its discretion in ruling the videos of the Defendant taken from Facebook . . . were not admissible." *State v. Johnson*, 17-859 (La.App. 3 Cir. 9/21/17) (unpublished opinion). Ultimately, all of the videos would be admitted at trial.

A jury trial was held from September 18, 2017 through September 26, 2017. On September 20, 2017, Defendant moved to quash the petit jury venire or, in the alternative, sought a subpoena duces tecum and recess to conduct an inquiry into the jury selection process. In his motion, Defendant voiced concern that over 25% of

the Calcasieu Parish residents were African American, yet the first thirty-one jury veniremen called included only two African American females and two African American males.  Finding no merit to Defendant's motions, the trial court found Defendant failed to prove "fraud has been practices [sic], or some great wrong committed that would work irreparable injury to this defendant" under La.Code Crim.P. art. 419.

A unanimous jury convicted Defendant of first degree murder.  On March 14, 2018, the trial court sentenced Defendant as follows:

> I understand in this case the gravity in considering what was set forth in *Miller* [*v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455 (2012)] and *Montgomery* [*v. Louisiana*, ___U.S.___, 136 S.Ct. 718 (2016)], and consider it –and the Court did consider *Blakely v. Washington*, [545 U.S. 296, 124 S.Ct. 2531 (2004)] and did consider its progeny in determining the extent to which a juvenile offender would be subject under R.S. 14:30.  And that's mandatory life without imprisonment – without benefit of parole or probation.

> This Court can only conclude – Mr. Stacy Tyrone Johnson, would you please stand?  This Court can only conclude that after the U.S. Supreme Court has spoken and the Louisiana legislature has adopted, although clearly without much guidance, that the mandate set forth in *Miller vs Alabama, Montgomery vs Louisiana,* and *Blakely vs Washington*, that as a result of this sentence –considering the sentencing range without an investigation that life imprisonment with the benefit of parole or probation after 25 years is warranted.  As a result, this Court is going to rule the same.

Defendant now appeals his conviction and sentence, arguing two assignments of error.  First, the trial court erred in denying his motion to quash the jury venire or alternatively to issue subpoenas duces tecum.  Secondly, the trial court erred in admitting the evidence discussed in the two emergency writs sought during trial without the State presenting a theory of murder during an attempted armed robbery.

4

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, we review all appeals for errors patent on the face of the record. We find the trial court's statement that it was going to "rule the same" was not sufficient to impose a sentence on Defendant.

Louisiana Code of Criminal Procedure Article 871 provides, in pertinent part, as follows: "A sentence is the penalty imposed by the court on a defendant upon a plea of guilty, upon a verdict of guilty, or upon a judgment of guilt." In the early case of *State v. Burks*, 202 La. 167, 172, 11 So.2d 518, 519-20 (1942), prior to the enactment of our Louisiana Code of Criminal Procedure, "sentence" as used in criminal law was defined as "the pronouncement by the judge of the penalty or punishment as the consequence to the defendant of the fact of his guilt."

In *State v. Jones*, 517 So.2d 402, 406 (La.App. 5 Cir. 1987), *writ denied*, 522 So.2d 560 (La.1988), overruled on other grounds by *State v. Monk*, 532 So.2d 1143 (La.1988), the court explained, "The purpose of requiring the defendant's presence at sentencing and of pronouncing the sentence in open court is to insure the defendant is apprised of the punishment imposed, See C.Cr.P. arts. 835, 871 and comments thereunder." *See also State v. Kinchen*, 11-9 (La.App. 3 Cir. 6/8/11), 71 So.3d 344.

In *State v. Young*, 18-858 (La.App. 3 Cir. 5/15/19), 271 So.3d 422, a case with a similar sentencing issue, this court reviewed a scenario where the trial court neither orally stated for the record its reasons for sentence nor the actual sentence; rather, it merely referenced the written sentencing document. As a result, this court vacated defendant's sentence, and on remand, instructed the trial court to pronounce defendant's sentence orally in open court and record it in the court minutes as La.Code Crim.P. art. 871 required.

Here, the trial court did not pronounce Defendant's sentence in open court; rather, it merely referred to *Miller, Montgomery,* and *Blakely*, and simply stated without specificity to Defendant's conviction, "considering the sentencing range without an investigation that life imprisonment with the benefit of parole or probation after 25 years is warranted. As a result, this Court is going to rule the same." We find that this was insufficient to comply with our law as the sentencing colloquy did nothing to ensure Defendant was apprised of the particular punishment imposed. Accordingly, we vacate Defendant's sentence, and on remand, the trial court is instructed that Defendant's particularized sentence must be pronounced orally in open court and recorded in the court minutes as required by La.Code Crim.P. art. 871.

Before addressing Defendant's assignments of error, we further bring three additional sentencing errors to the trial court's attention which must be corrected on remand for resentencing. First, the trial court must impose the sentence at hard labor as provided in La.R.S. 14:30(C)(2). Second, because Defendant was under the age of eighteen when he committed the murder, the trial court is only authorized to impose Defendant's sentence with the benefit of parole after serving twenty-five years. La.Code Crim.P. art 878.1(A) and La.R.S. 15:574.4(E). There is no statutory authority for the trial court to order Defendant's sentence to be served with the benefit of probation. Finally, the trial court must correctly inform Defendant that he has two years after the conviction and sentence become final to seek post-conviction relief. La.Code Crim.P. art. 930.8. As this court recently stated in *State v. Breaux*, 18-771, p. 6 (La.App. 3 Cir. 3/13/19), 269 So.3d 1046, 1051, "Rather than the date of sentencing in the trial court, the two-year time limitation commences either when the defendant fails to perfect an appeal, La.Code Crim.P. art. 914, or after a timely

appeal has been perfected and a judgment has become final, La.Code Crim.P. art. 922."

**ASSIGNMENT OF ERROR NO. 1**

In his first assignment of error, Defendant contends the trial court erred in denying his motion to quash the jury venire without an evidentiary hearing and without granting subpoenas duces tecum to investigate the jury selection process. Defense counsel contented was that the jury venire did not contain enough African Americans to "reflect the racial composition of the parish and the jury list provided to counsel did not reflect the racial identity of the potential jurors or of those excused prior to trial."

The requirements for quashing a general jury venire are provided in La.Code Crim.P. art. 419, which states, in pertinent part:

> A. A general venire, grand jury venire, or petit jury venire shall not be set aside for any reason unless fraud has been practiced, some great wrong committed that would work irreparable injury to the defendant, or unless persons were systematically excluded from the venires solely upon the basis of race.

In *State v. Clark*, 12-508, pp. 97-98 (La. 12/19/16), 220 So.3d 583, 662, *cert. granted, judgment vacated on other grounds*, ___U.S.___, 138 S.Ct. 2671 (2018), the supreme court set forth the proof necessary for the granting of a motion to quash the jury venire, specifically noting that the defendant bears the burden of proving purposeful discrimination in the selection of jury venires:

> This court has long recognized the procedural device for alleging that "the petit jury venire was improperly drawn, selected or constituted" is a motion to quash. LSA–C.Cr.P. art. 532(9); **State v. Edwards**, 406 So.2d 1331, 1347 (La. 1981); **State v. Collins**, 359 So.2d 174, 177 (La. 1978). The defendant did not file a motion to quash on this basis, in accordance with the form or timeliness requirements set forth in LSA–C.Cr.P. arts. 521, 535(C), and 536, and therefore waived his objection. LSA–C.Cr.P. art. 535(D); **Edwards**, 406 So.2d at 1347; **Collins**, 359 So.2d at 177.

Moreover, LSA–C.Cr.P. art. 419(A) provides, "A petit jury venire shall not be set aside for any reason unless fraud has been practiced, some great wrong committed that would work irreparable injury to the defendant, or unless persons were systematically excluded from the venires solely upon the basis of race." The burden of proof rests on the defendant to establish purposeful discrimination in the selection of grand and petit jury venires. **State v. Sheppard**, 350 So.2d 615, 651 (La. 1977) (citations omitted). See also **State v. Lee**, 559 So.2d 1310, 1313 (La. 1990); **State v. Loyd**, 489 So.2d 898, 903 (La. 1986); **State v. Liner**, 397 So.2d 506, 516 (La. 1981); **State v. Manning,** 380 So.2d 54, 57 (La. 1980). The defendant did not meet that burden, and the trial court did not err in overruling his improperly raised, untimely, and unsupported objection without an evidentiary hearing. This assignment of error is without merit.

Although Defendant contends is that a disproportionately small number of African Americans appeared in the jury venire, he does not allege fraud or systematic exclusions. Indeed, although Defendant contends that 25.5% of Calcasieu Parish is African American, the motion to quash presented to the trial court has no attachments and thus lacks any evidentiary support for this claim. Furthermore, our review of the record shows that the motion to quash has numerous unfilled blank spaces, references a "Mr. Crawford" as the defendant in multiple locations, and discusses the jury-selection procedure from Caddo Parish throughout, concluding in the final page of the motion:

In the alternative, this Court should continue this trial for three days and issue a subpoena duces tecum to Hon. Gary Loftin, Clerk of Court for the First Judicial District Court, Eugene R. Bryson, Jr., Court Administrator for the First Judicial District, the Deputy Court Administrator for the First Judicial District, and the Jury Coordinator for the First Judicial District to produce: for the petit jury venire summonsed for this trial week: the jury summonses, the returns of jury summonses, the record of any discretionary excusals prior to assignment to courtrooms, the lists of jurors assigned to each section of this Court.

Indeed, the very last sentence in the motion requests three days for counsel to "analyze the documents provided by Judge Bryson and make a more complete showing to this Court on the fair cross-section and equal protection claims made in this motion." Despite the inaccuracies contained in Defendant's motion, we do note,

however, that the correct individuals involved in the present case are properly identified at the beginning of the motion to quash. Also, as noted above, there are numerous blank spaces in the motion, particularly with regard to the percentages of African Americans in the venire and Defendant's claim that it is routine:

> 5) The Census Bureaus' 2012 estimates for Calcasieu Parish reflect that African Americans represent 25.5% of the population of adults in the parish. African American Males represent 12.75% of the population of adults in the parish. By contrast, of the venire members whose race is known, only ___% are African American and only ___% are African American males.
>
> 6) This represents a relative disparity of some ___% between the parish population of African Americans and those represented on the venire. It also represents a staggering ___% relative disparity between the parish population of African American males and those represented on the venire.
>
> 7) This is not a one-off vagary of random jury selection in this parish and district. In the ____trial of _____ conducted in this courthouse in _____, 201_, only ____% of the venire presented for voir dire were African American males.

Within Defendant's motion to quash, he cited the following standard for establishing a prima facie violation of the right to a petit jury selected from a representative cross section of his community:

> The Supreme Court recently explained the *Duren* [*v. Missouri*, 439 U.S. 357, 99 S.Ct. 664 (1979)] test as follows:
>
> > To establish a prima facie violation of the fair-cross-section requirement, this Court's pathmarking decision in *Duren* instructs, a defendant must prove that: (1) a group qualifying as "distinctive" (2) is not fairly and reasonably represented in jury venires, and (3) "systematic exclusion" in the jury-selection process accounts for the underrepresentation. 439 U.S., at 364, 99 S.Ct. 664; see *supra*, at 1387-1388.
>
> *Berghuis v. Smith*, --- U.S. ---, 130 S.Ct. 1382, 1392 (2010).

We find, after carefully reviewing the record, that Defendant's motion failed to actually establish either the second or third requirement, as, aside from an unsubstantiated claim regarding the results of the 2012 census estimates, it did not

provide any basis for the claim that African Americans were not fairly represented. Furthermore, the motion did not address any other cases or otherwise establish "systematic exclusion." Instead, Defendant's motion attempted to rely upon *Scott v. Schedler*, 11-926, (E.D. La. 1/22/13) (unpublished opinion), which found the Louisiana Secretary of State, the Department of Health and Hospitals, and the Department of Children and Family Services were in violation of the National Voter Registration Act and issued an injunction directed to Tom Schedler, in his capacity as Secretary of State. We note, however, that as of June 15, 2016, the injunction against Secretary Schedler has been vacated. *See Scott v. Schedler*, 826 F.3d 207 (5th Cir. 2016). Furthermore, we find that even if Louisiana's failure to comply with the National Voter Registration Act could be considered sufficient to meet Defendant's burden of proving "systematic exclusion" under *Duren*, 439 U.S. 357, the motion still failed to establish that African Americans were not fairly and reasonably represented.

Defendant's motion to quash also raised an Equal Protection claim and noted:

41)     The Supreme Court has articulated a framework for establishing whether such a discriminatory purpose exists in the context of jury selection in a criminal case:

> The first step is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied. . . . Next, the degree of underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time. . . . Finally, a selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing.

*Castaneda v. Partida*, 430 U.S. 482, 494-495 (1977) (citations omitted).

Again, Defendant's motion failed to establish the degree of underrepresentation. As such, we find the trial court was correct to deny the motion

to quash the jury venire, particularly in light of La.Code Crim.P. art. 419(A)'s requirement that Defendant prove fraud, irreparable harm to Defendant, or exclusion based solely on race.

Defendant now relies upon *State v. Cannon*, 19-590 (La. 4/18/19), 267 So.3d 585, for support that his motion to quash the jury venire should have been granted. In *Cannon,* the supreme court stated the following:

> **Stay lifted. Writ granted.** Defendant has shown that, under the system employed in East Baton Rouge Parish, persons born after June 2, 1993, otherwise qualified to serve on the jury, were never given an opportunity to serve, because their names were excluded from the general venire as a result of a significant error in the process by which the general venire was composed. That exclusion resulted in a general venire that was improperly constituted under Code of Criminal Procedure articles 401 et seq. and Louisiana Constitutional Articles I, § 3 ("No person shall be denied the equal protection of the laws.") and V, § 33 ("A citizen of the state who has reached the age of majority is eligible to serve as a juror within the parish in which he is domiciled."). Accordingly, we grant defendant's application to reverse the rulings of the courts below, grant defendant's motion to quash the general venire, and remand to the district court for further proceedings so that a petit jury can be chosen from a general venire that is selected according to law. See *State v. Jacko*, 444 So.2d 1185 (La. 1984); *State v. Procell*, 332 So.2d 814 (La. 1976).

*Id.* at 585-86. In his concurring opinion, Justice Guidry stated:

> Given the unique posture and circumstances of this case, I agree that commencing jury selection from a newly constituted venire is prudent, both out of an abundance of caution and to prevent a possible waste of judicial resources. Notwithstanding, this court, in my view, has not been directed to any constitutional provision or jurisprudence, whether federal or state, that would mandate quashing the general jury venire because of a software glitch that unintentionally excluded potential jurors born after June 2, 1993, and I withhold my judgment on that issue.

*Id.* at 586.

From the outset, we observe that Defendant has failed to state what prejudice he believes he suffered by the trial court's denial of his motion to quash or alternative motion for subpoena duces tecum. Furthermore, because this court has already upheld the validity of the jury selection process in Calcasieu Parish, Defendant in

11

fact suffered no prejudice. *State v. Edwards*, 19-461 (La.App. 3 Cir. 6/21/19) (unpublished opinion). The *Cannon* decision was based upon a computer glitch that categorically excluded anyone born after June 2, 1993, because the East Baton Rouge Parish database from which jurors were called for jury duty had not updated in nearly a decade. This court considered a similar claim directly involving Calcasieu Parish in. A majority of this court issued the following ruling:

> **WRIT GRANTED AND MADE PEREMPTORY:** The State seeks review of the trial court's June 18, 2019 ruling granting Defendant's motion to quash the jury venire. In his written "Motion to Quash The Venire," Defendant alleged that the software used in Calcasieu Parish to pull eligible venire persons from the voter registration database is updated once every three years. Because any individual that registered to vote since the last update would be excluded from the jury venire, Defendant alleged that this process resulted in the exclusion of those individuals, namely those individuals ages eighteen, nineteen, and twenty. Relying upon *State v. Cannon*, 19-590 (La. 4/18/19), 267 So.3d 585, the trial court found the process used in Calcasieu Parish excluded a cognizable group of individuals and granted the motion to quash the jury venire in its division only.
>
> The group of people excluded from the jury venire under the process used in the present case encompasses those persons who have registered to vote since the last update, whether the registration is because of age, moving into the parish, or for some other unknown reason. Thus, the group is not limited to persons who are the ages of eighteen, nineteen, and twenty. Additionally, both state and federal cases have declined to find a group of eighteen to twenty-year-old persons to be a cognizable community group. *State v. McKinney*, 302 So.2d 917 (La.1974); *State v. Taylor*, 303 So.2d 169 (La.1974); and *Johnson v. McCaughtry*, 92 F.3d 585 (7th Cir. 1996), *cert. denied*, 519 U.S. 1034, 117 S.Ct. 596 (1996). Even if considered a cognizable community group, Defendant has not established that the temporary exclusion of this group from the jury venire because of an established process is an unreasonable means of accomplishing the orderly administration of justice. *See Hamling v. United States*, 418 U.S. 87, 94 S. Ct. 2887 (1974).
>
> Finally, we find *Cannon* is distinguishable from the present case. In *Cannon*, persons born after June 2, 1993, otherwise qualified to serve on the jury, were *never* given the opportunity to serve based on a significant *error* in the process by which the general venire was composed. On the contrary, in the present case individuals who have registered to vote since the last update are *temporarily* excluded from jury service because of a properly functioning process – a process that has not been proven to be an unreasonable means of accomplishing the

12

orderly administration of justice. *See Hamling*, 418 U.S. 87. Accordingly, the trial court's ruling granting Defendant's motion to quash is reversed, and the case is remanded for further proceedings consistent with this decision.

*Id.*

Given this court's prior ruling that the Calcasieu Parish process of selecting jurors accomplishes the orderly administration of justice and is valid, in addition to Defendant's highly deficient motion to quash and failure to allege any prejudice, we find Defendant's assignment of error lacks merit.

## ASSIGNMENT OF ERROR NO. 2

In his second and final assignment of error, Defendant contends the trial court erred in admitting a video and Facebook photos without first presenting evidence that an armed robbery was intended. Specifically, Defendant contends the trial court failed to require the State to introduce evidence of an armed robbery before introducing the evidence, in violation of this court's rulings in docket numbers 17-851 and 17-859. Defendant notes that the video and photos were introduced after this court's initial ruling in 17-851 but before our clarification in 17-859.

This court's rulings regarding admissibility of the "fake shooting" video essentially established that the State could introduce the video if it presented a theory that Defendant murdered Mr. Colston during an attempted armed robbery. During opening statements, the State told jurors:

> You'll learn that this was a crime of opportunity. This was a crime that happened to an old man known to Mr. Johnson, an old man that traveled along the road where Mr. Johnson lived, very often, an old man that was known to carry large amounts of money. And evidence is going to show that he had more than $1,000 in cash on him when he was killed. And, again, like I said, Mr. Colston owned rental houses. He would go to collect rent.

Additionally, Sergeant Franklin Fondel, one of the lead detectives on the case, testified:

In my investigation, I knew from time-to-time that he [Mr. Colston] would go around and collect rent money. I learned that in my investigation. But I never - - you know, that would probably have him with a large amount of cash with him going around from time-to-time and collecting rent money from his tenants.

Furthermore, when asked if he had any theory on Defendant's intent, Sergeant Fondel stated "the motive would have been as of a robbery." Following this court's clarification ruling in docket number 17-859, defense counsel moved for a mistrial based upon the State's presentation of the "fake shooting" video:

As the Court originally ruled, it's highly prejudicial evidence, and it makes a difference even - - now, we have seen no evidence of a robbery or an attempted robbery at this point other than what can be inferred in a very attenuating way that here's a man who was known to carry cash, and he perished of a gunshot wound and the damage and the loss of blood from that. But that's in - - other than that it's just innuendo. They don't have any armed robbery evidence in the record before the jury gets to see this highly prejudicial evidence which we now know the Court of Appeals was saying would have been premature to admit.

Even if the State, which has yet to be demonstrated that they can or will, even if the State now brings evidence of an armed robbery or an attempted armed robbery, the damage is done because the jury now looks at - - the risk is too great that the jury has already [been] greatly influenced before they saw anything that the State will contend is evidence of an armed robbery, and they might be more inclined to consider marginal evidence as being credible evidence of an armed robbery. The cart was before the horse.

The State argued Sergeant Fondel's testimony was at least circumstantial evidence and thus satisfied this court's instruction that the State could introduce the video "if the State offered evidence that the first degree murder occurred during the commission of an attempted armed robbery of the victim, Robert Colston, Sr." *Johnson*, 17-859. The trial court then denied the mistrial request, specifically finding Sergeant Fondel's testimony was sufficient to justify introduction of the video.

We find that based on the jury instructions, it is clear the State argued as a theory of the case Mr. Colston was murdered during an attempted armed robbery.

14

In particular, we note the jury instructions include the following definition of first degree murder: "First degree murder is the killing of a human being when the offender acted with a specific intent to kill or to inflict great bodily harm and in addition the offender was engaged in the commission or attempted commission of armed robbery." The instructions then define armed robbery and attempt before informing the jury that the State must prove Defendant killed Robert Colston, Sr. and that either Mr. Colston was over sixty-five years old or the murder occurred when Defendant "was engaged in the commission or attempted commission of armed robbery." Additionally, the State argued during closing arguments that Defendant could be guilty of murder under two separate theories, noting it would be sufficient to find either that Defendant was attempting to rob Mr. Colston or simply that Mr. Colston was over the age of sixty-five.

The jurisprudence is clear that the State is allowed to argue alternative theories of a crime. In *State v. Harmon*, 13-1211, pp. 20-21 (La.App. 3 Cir. 6/4/14), 139 So.3d 1195, 1208-09, *writ denied*, 14-1309 (La. 2/6/15), 158 So.3d 814 (emphasis added), this court discussed the State's argument that a murder could be second degree murder either as felony murder or specific intent murder:

> In this case, the defendant was convicted of second degree murder, a violation of La.R.S. 14:30.1. For the jury to have convicted the defendant of that offense, it had to have found that the state established beyond a reasonable doubt that the defendant killed Ms. Wood and that he either had the specific intent to kill her or inflict great bodily harm or that he committed the offense during the commission of another felony, including aggravated or forcible rape. *Id.* The record does not indicate the finding on which the jury based its verdict.
>
> In *State v. Patorno,*01–2585 (La.App. 1 Cir. 6/21/02), 822 So.2d 141, the trial court instructed the jury that it could either find that the defendant charged with second degree murder had the specific intent to kill or inflict great bodily harm on the victim or that he killed the victim during the perpetration of a listed felony. After his conviction, the defendant argued on appeal that ten jury members required to convict "may not have reached the necessary agreement to support a second degree murder conviction under the same theory" based on the

15

evidence and the jury instructions. *Id.* at 148. The first circuit held that "a jury is not constitutionally required to agree on a single theory to convict a defendant where it is instructed as to **alternate theories**. Thus, a conviction can be upheld if there is sufficient evidence based on either of the **alternate theories** with which the jury is charged." *Id.* at 149 (citations omitted).

Here, the record does not indicate the theory under which the jury convicted the defendant of second degree murder. If the verdict was based on felony murder, the only evidence at trial pertaining to rape was the autopsy report. Thus, the autopsy report would be the basis for more than proof of the fact and cause of death. However, evidence other than the autopsy report was sufficient to show that the killer had the specific intent to kill the victim or inflict great bodily harm on the person of Ms. Wood. The jury convicted the defendant of the offense and, based on the holding in *Patorno,* 822 So.2d 141, we find that evidence was sufficient for the jury to convict him on the specific intent theory of the offense. Thus, while we find that the trial court erred in allowing the coroner's report to be introduced into evidence, we find this to be harmless error. We find no merit in this assignment of error.

In the present case, we find that the State's use of the "fake shooting" video complied with this court's orders in docket numbers 17-851 and 17-859, as there was testimony presented invoking robbery as the motive for the shooting. Under La.Code Evid. art. 404(B), evidence of other crimes, wrongs, or bad acts may be admissible for purposes:

[S]uch as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

We find that there was no error in the trial court's admission of the "fake shooting" video. Despite Defendant's claim that introduction of the video was pretextual because the prosecutor acknowledged armed robbery was not necessary for this to be a first degree murder, there is no precedent that suggests the existence of a stronger alternate theory automatically makes the pursuit of a weaker theory "pretextual." As noted above, the State may argue multiple theories of a crime.

Defendant also contends the trial court erred when it allowed photos taken from Facebook which depicted Defendant with firearms to be introduced after initially declaring them too prejudicial. Defendant contends this court's rulings in docket numbers 17-851 and 17-859 denied "the State the right to use the videos from Facebook." To the contrary, we find the language in both rulings was simply that the trial court did not abuse its discretion in ruling the Facebook videos/photos were too prejudicial under La.Code Evid. art. 403. As recently reiterated by the supreme court in *State v. Coleman*, 14-402, p. 39 (La. 2/26/16), 188 So.3d 174, 205, *cert. denied*, ___ U.S. ___, 137 S.Ct. 153 (2016), "The trial court has broad discretion in weighing the probative versus prejudicial value of evidence under La. C.E. art. 403, and its ruling on the admissibility of evidence pursuant to La. C.E. art. 404B(1) will not be disturbed absent an abuse of discretion."

The Facebook images were introduced during the cross-examination of Defendant's brother, Brandale Johnson. Defense counsel first asked Mr. Johnson whether he saw Defendant with a firearm specifically .the day Mr. Colston was shot. On cross-examination, defense counsel objected to the State asking Mr. Johnson about two photographs that depicted Defendant with a gun, arguing "I only ever asked this witness about that day and that occasion." The State correctly noted it is not limited on cross-examination to matters upon which defense counsel questioned a witness. The trial court overruled the objection, "I think this door was clearly opened when this witness was called. This is in direct contravention. He's impeaching this witness as to his testimony. It's clearly appropriate cross-examination. I deny the objection and allow him to proceed."

Mr. Johnson identified State's Exhibit 54 as a photograph of him and Defendant "playing with fake guns." Our review of the record shows that this photograph is a selfie taken by Mr. Johnson with Defendant behind him holding a

17

gun toward the camera. He acknowledged the photo was taken some time around June 2016. Mr. Johnson then denied seeing Defendant carry guns, claiming any testimony that Defendant frequently carried guns was false. Mr. Johnson then acknowledged State's Exhibit 55 was a selfie Defendant took, using the phone of Mr. Johnson's girlfriend. The photograph showed Defendant holding a real gun.

Although Defendant again complains that trial counsel only asked Mr. Johnson about Defendant carrying a gun on the day of the shooting, the State was correct that defense counsel's questions do not control the State's cross-examination. Under La.Code Evid. art. 611(B), "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility." As previously noted by the fourth circuit, "A trial court's ruling admitting/permitting the introduction of evidence carries with it an implicit conclusion that the trial court found the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, as per La. C.E. art. 403." *State v. Cox*, 15-124, p. 10 (La.App. 4 Cir. 7/15/15), 174 So.3d 131, 137, *writ denied*, 15-1557 (La. 10/10/16), 207 So.3d 407.

Although prior to trial the court initially ruled the photographs in question were inadmissible, it nonetheless has the authority to change its ruling regarding admissibility as the circumstances change during trial. Indeed, this court noted in its ruling on the "fake shooting" video in docket number 17-851 that our ruling was only preliminary, and that circumstances during trial might alter the admissibility of any given evidence. Given that Mr. Johnson stated he had not seen his brother carry guns, we cannot say the trial court abused its discretion in allowing the State to introduce photographic evidence that Defendant had previously carried guns. *See Coleman*, 188 So.3d 174.

In light of the above, we find the trial court did not err when it admitted either the "fake shooting" video or the photographs of Defendant holding a gun. Therefore, we find Defendant's assignment of error is without merit.

## DISPOSITION

We affirm Defendant's conviction. We vacate Defendant's sentence and remand this matter to the trial court for resentencing in accordance with the foregoing instructions.

**CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED WITH INSTRUCTIONS.**